339 A.2d 253.

STATE *vs.* PHILIP A. PAILIN.

JUNE 11, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

726

KELLEHER, J. The defendant was convicted by a Superior Court jury on an indictment charging him with rape, breaking and entering with intent to commit rape, and breaking and entering with intent to commit larceny. He asks that we overturn this conviction because of prejudice which he claims occurred as a result of three incidents during his trial.

The prosecutrix was 69 years old at the time of trial. She lived on the first floor of a small apartment house. The defendant was the boyfriend of the prosecutrix' upstairs neighbor. The evidence shows that defendant often stayed with his girlfriend and her three children. He sometimes received mail there.

On February 5, 1973, the prosecutrix was up very early, and at about 5:30 a.m. she went out of her apartment into the common hallway to put her cat outside. There she saw and spoke briefly to defendant. She returned to her apartment and minutes later heard the crash of the front door being broken down and found herself face-to-face with defendant. The defendant queried the prosecutrix about her available cash, saying he needed it to fix his car; he then forced her into the bedroom and raped her. He left threatening her with death if she went to the police.

The complaining witness took a bus to her landlord's

office and reported the incident to him. He sent a handyman with his tenant to secure the apartment, fix the broken door, and to drive her to the police station where she reported the incident.

The defendant was apprehended at his girlfriend's apartment some 7 months later and was brought to trial. Through his own testimony and that of his brother, defendant placed his alibi before the jury. His story was that he had gone to Philadelphia with his brother and his brother's girlfriend Diane. His brother placed the date of the move as sometime in January, but upon having his memory refreshed on cross-examination with a motor vehicle registration card showing that the car in which the trio traveled to Philadelphia was registered in Providence on February 2, he decided that they had left on that date. The defendant corroborated his brother's story and told the jury that he moved to Philadelphia where he stayed until his return to Providence the following September. Diane did not testify at the trial.

The prosecutor, in his closing argument to the jury, reviewed the cast of witnesses who had testified for either side. In commenting on the defense, he said, "[w]here are—where's Diane? You know, I can comment, I think it's fair to comment on defense now. They put on — where's Diane —." His summation was cut short by a defense objection and, after a brief bench conference, the prosecutor continued his argument to the jury on a different issue and did not again refer to the missing Diane.

The defendant argues before us that this attempt by the state to use the "empty-chair doctrine" was improper and that its resultant effect was prejudicial to his right to a fair trial. This court has not yet had the occasion to delineate the permissible use of this trial tactic in criminal cases where the defendant presents a defense and

also takes the stand himself. We likewise will not decide the question now.

We have made it perfectly clear that for a defendant to preserve a question of prejudicial error in closing argument for our review he must not only make an objection at the time, but must make a request for cautionary instructions. Except under circumstances where the trial justice could find no fault with the challenged remarks, or where they are so flagrant that no precautionary instruction could dilute their effect, this failure to request instructions is fatal. *State* v. *Plante,* 111 R. I. 386, 302 A.2d 804 (1973); *State* v. *Mancini,* 108 R. I. 261, 274 A.2d 742 (1971). The defendant asked the trial justice to declare a mistrial, but once this request was denied, he remained silent and did not request instructions either at the bench conference or at the close of the state's argument, nor did he object to any of the justice's charges to the jury in regard to this point. Having failed at trial to request curative measures of the allegedly prejudicial remarks of the prosecutor, defendant will not be heard to complain here.

In addition to offering testimony by the prosecutrix, her landlord, and his maintenance man about the events surrounding the rape, the state put the 13-year-old son of defendant's girlfriend on the witness stand. His testimony placed defendant in the upstairs apartment on the night of the 4th and the morning of the 5th. This obviously damaging testimony was directly contradictory to defendant's alibi defense. The defendant makes no attack on this portion of the young man's testimony; he does, however, allege that certain hearsay testimony which came before the jury during his cross-examination of the child was prejudicial and should have required a mistrial.

On cross-examination, defendant asked the boy if he had heard any noises during the night. The boy responded

that he hadn't but "[m]y mother said she did the next morning." A motion to strike was immediately interposed by defendant and was granted. In addition the trial justice instructed the jury to disregard the answer. The defendant, out of the hearing of the jury, then moved to pass the case; this the trial justice denied, although he did offer to expand his cautionary remarks to the jury. The defendant did not avail himself of the offer and cross-examination continued uneventfully.

The jury heard another day and a half of testimony; then they were charged and retired to deliberate. After 2½ hours of deliberation, the jury returned to the courtroom and requested a rereading of the 13-year-old's testimony. The stenographer, in reading the testimony from her notes, reread the previously stricken question and answer. The trial justice again admonished the jury to disregard the offending statement. The defendant again moved to pass the case, which motion was again denied; he now alleges that the hearsay twice heard by the jury irreparably prejudiced him.

Motions to pass are addressed to the sound discretion of the trial justice. He has a "front-row seat" at the trial and can best determine the effect of the improvident remarks upon the jury. His determination is to be given great weight and will not be disturbed unless clearly wrong. *See Salimeno v. Barber,* 108 R. I. 705, 279 A.2d 419 (1971).

The general rule is that cautionary instructions to a jury to disregard inadmissible evidence which has been stricken from the record are deemed to cure such error. *Edwards v. State,* 320 A.2d 701 (Del. 1974); *Veney v. State,* 251 Md. 182, 246 A.2d 568 (1968); *see State v. Bower,* 109 R. I. 198, 283 A.2d 39 (1971). In addition we note that the hearsay was merely cumulative of the fact that the door had been broken down by the rapist. The prosecutrix had already testified to that fact, as had

the maintenance man who repaired the door. The improper statement did not implicate defendant. In fact, his alibi placed him about 250 miles from the scene of the crime. Whether or not there was a loud noise on the night of February 4-5 was of only minor probative value. The hearsay, even though heard twice by the jury, was not prejudicial. It was not reasonably possible that the objectionable sentence could have either distracted the jurors' attention from, or influenced their decision on, the ultimate issue of guilt or innocence. *State* v. *Bower, supra.*

The last facet of this appeal concerns the failure of the trial justice to include within his charge an admonition to the jury that they must first consider the voluntariness of an admission allegedly made by defendant to the police before they can consider the substance of the admission. A detective had testified that while he was explaining to defendant the various portions of a form which embody the Miranda warnings, he read to defendant that portion of the form which reads, "Do you wish to give a statement?" At this point, defendant is alleged to have looked up at the detective and said, "I burglarized the chick's crib and took her money but I didn't rape her." The defendant, who testified at a voir dire concerning this admission, conceded that there was nothing coercive about his encounter with the detective. His only complaint was that he never made the statement attributed to him by the officer.

The trial justice ruled that, if made, defendant's statement was a spontaneous utterance which apparently came as quite a surprise to the detective, whose sole purpose at the time was to give an explanation of the form. The jury was told that they were to judge the credibility of the witness. Hence, it was up to the jury to determine whether the defendant said what the detective reported him as saying. At no time was a request made that the trial

justice charge the jury that they could not determiné where the truth lay until they had first determined the voluntariness of the defendant's alleged admission. Super. R. Crim. P. 30 is clear and concise: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." This claim of error is without merit. *State* v. *Murphy,* 113 R. I. 565, 323 A.2d 561 (1974).

The defendant's appeal is denied and dismissed, and the case is remanded to the Superior Court for further proceedings.

*Julius C. Michaelson,* Attorney General, *John Austin Murphy,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Carmine A. Rao,* Asst. Public Defender, for defendant.