**STATE**

v.

**Thomas BRENNAN.**

**86–100–C.A.**

Supreme Court of Rhode Island.

July 2, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., Providence, for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The Brennan brothers, Thomas and Michael, were arrested and tried separately for the brutal slaying of eighty-one-year-old Lawrence Bello. Each was convicted of felony murder and sentenced to life imprisonment. We recently affirmed Michael's conviction in *State v. Brennan*, 526 A.2d 483 (R.I.1987), where the facts relating to the murder can be found. This is Thomas's appeal.[1]

His initial argument relates to the testimony of Raymond Furtado (Furtado). Furtado testified that when he, Thomas, and Michael were being detained at the Adult Correctional Institutions (ACI), Thomas told him that he, Thomas, was responsible for the death of the eighty-one-year-old landlord. The state concedes that it did not reveal this information to Thomas or his counsel until sometime after Thomas's trial had begun. Thomas argues that the trial justice should have precluded the use of this testimony because it violates the spirit and letter of Rule 16 of the Superior

Court Rules of Criminal Procedure. Admittedly, Rule 16(i) provides a variety of sanctions that can be applied in cases in which the state violates its continuous duty to provide pertinent information to an accused. *State v. Concannon*, 457 A.2d 1350, 1353 (R.I.1983).

At a hearing on Thomas's motion to preclude, the state explained that originally it had listed Furtado as a witness who was to testify in Michael's case. It was the state's belief that Furtado's testimony about Michael's participation might be used as an "adoptive admission" against Thomas when Thomas came to trial.[2] Just prior to the hearing on the motion to preclude, the state had informed Thomas and his counsel that Furtado would identify Thomas, not Michael, as the individual who actually confessed to murdering Bello. Consequently, the trial justice, in view of the events, denied Thomas's motion for preclusion.

Thomas now argues that the trial justice erred because the denial worked to Thomas's disadvantage. He points out that the disclosure came subsequent to the time when his counsel had made his opening statement to the jury. Thomas claims that if the defense had been aware of the precise nature and content of Furtado's appearance, his counsel might have adopted a different strategy when he addressed the jury.

Despite Thomas's assertion to the contrary, we fail to see any prejudice to Thomas that would warrant the preclusion of Furtado's testimony. Furtado's proposed testimony was disclosed to Thomas eight days prior to the time Furtado appeared in court as a witness. Thus Thomas had ample time to prepare a cross-examination of Furtado. Moreover, the trial justice had offered Thomas's counsel additional time to prepare if so requested. The rejection of

---

1. We will address only those issues raised by Brennan that were not resolved in *State v. Brennan*, 526 A.2d 483 (R.I.1987).

2. An adoptive admission has been described as conduct whereby a party, by words or conduct, signifies his or her acquiescence or approval of an out-of-court statement. This principle is sought to be employed frequently in instances in which there is a conversation with the defendant in which the defendant agrees with the remarks of the other party. However, it is suggested that the principle be utilized with some degree of caution. *State v. Howerton*, 329 S.E.2d 874, 880 (W.Va.1985); *McCormick on Evidence* § 269 (3d ed. Cleary 1984); *see also* 4 Wigmore, *Evidence* §§ 1069–75 (Chadbourn rev. 1972).

such an opportunity is further evidence that the defense needed no additional time to prepare for crossexamination, nor was there any necessity for a change of strategy. *State v. Rossi*, 520 A.2d 582 (R.I.1987).

Thomas next contends that the trial justice erred in permitting Furtado to testify that notes were passed between Thomas and Michael Brennan while they were in prison and that Furtado acted as a courier between the brothers. Thomas argues that the prejudicial impact of this testimony far outweighed its probative value because the "unmistakable image" given to the jury is that the note-passing "constituted nefarious conduct replete with criminal overtones."

■■■ Again we must disagree with Thomas relative to the exchange of notes. This testimony was relevant to establish the fact that Furtado, Thomas, and Michael had developed a trusting relationship with one another, thus lending credence to Furtado's testimony about Thomas's jail house admission. Furthermore, a trial justice's ruling on the admission or exclusion of evidence on relevancy grounds will not be disturbed absent a showing of abuse of discretion. *Abbey Medical/Abbey Rents, Inc. v. Mignacca*, 471 A.2d 189 (R.I.1984).

■■■ The last claim relative to Thomas concerning Furtado's testimony is that the trial justice improperly limited extensive cross-examination of this witness. Thomas asserts that the goal of the cross-examination was to establish in the jury's mind that Furtado was a "professional" witness for the state. However, a review of the questions asked of Furtado reveals that at no time could a trial justice have determined such a purpose from inquiries that were overly broad and vague. Consequently, we cannot fault the trial justice for actions taken in permitting Furtado to testify and inform the jury of the substance of the conversations he and Thomas had at the ACI.

■■■ Thomas also faults the trial justice for his refusal to pass the case and declare a mistrial when certain information reached

the jury. This information, in Thomas's eyes, implied that he had a criminal record. The first instance complained of occurred during the testimony of a Providence detective. The officer, when reading the statement given by Thomas to the police, quoted a passage in which Thomas referred to visiting with his "parole officer." The second episode occurred during final argument when the prosecutor referred to a defense witness as "another convicted murderer." [3] Thomas argues that these "oblique" references to his past were sufficiently prejudicial that he was denied a fair trial. However, Thomas concedes that at no time was there ever a request to the trial justice for a cautionary instruction.

It is well established that a decision to pass a case and declare a mistrial lies within the sound discretion of the trial justice. *State v. Anil*, 417 A.2d 1367, 1372 (R.I. 1980). Although a defendant is generally required to request cautionary instructions in order to preserve this issue on appeal, this requirement will be waived by this court "whenever a request for instructions would have been futile or any attempt to palliate the prejudice would have been ineffective." *Id.* at 1373. When a defendant has not made a timely request for instructions, this court "shall order a new trial only when we feel that the improper material was so indelibly etched in the jurors' minds that it 'could have either distracted the jurors' attention from, or influenced their decision on, the ultimate issue of guilt or innocence.'" *Id.* (quoting *State v. Pailin*, 114 R.I. 725, 730, 339 A.2d 253, 256 (1975)).

We are of the opinion that the references to Thomas's past were not so prejudicial as to play any part in the jury's determination that Thomas was guilty as charged.

■■■ Thomas's final argument on appeal concerns the testimony of Thomas's girlfriend, who appeared as a witness for the prosecution. Here again, Thomas claims that the trial justice improperly restricted crossexamination, during which Thomas hoped to show that his girlfriend had re-

---

3. Thomas, at the time of the Bello killing, was

on probation for a manslaughter conviction.

ceived inducements from the state in exchange for her testimony.

This court has recently reaffirmed the rule that holds that a trial justice has the discretion to limit cross-examination once there has been sufficient cross-examination to satisfy a defendant's confrontation rights. *See State v. Burke,* 522 A.2d 725, 733 (R.I.1987). Here, the girlfriend testified that she had received no inducements or promises from the state in exchange for her testimony. On cross-examination, Thomas did establish that she had been placed in a deferred sentence status after pleading nolo to a shoplifting charge. Thomas's further efforts at discrediting his girlfriend came to a halt after he acknowledged to the trial justice that he did not have any further information that would contradict his girlfriend's insistence that there was no quid pro quo for her willingness to appear as a witness for the prosecution. The trial justice's action in this regard comports completely with this court's holding in *State v. Bowden,* 473 A.2d 275, 279 (R.I. 1984), where we noted that a fishing expedition on cross-examination may properly be brought to a halt when it becomes obvious that the pond is devoid of fish.

Thomas has made several other arguments that we have considered, but we find that they are of little or no merit.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.