STATE

v.

Leo L. DeLAURIER, Jr.

No. 85–264–C.A.

Supreme Court of Rhode Island.

Dec. 2, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

Mark L. Smith, Woonsocket, for defendant.

## OPINION

FAY, Chief Judge.

This case comes before the Supreme Court on an appeal by the defendant, Leo

L. DeLaurier, Jr. On May 22, 1984, a Superior Court jury found the defendant guilty of six violations of the Uniform Controlled Substances Act, G.L. 1956 (1982 Reenactment) § 21–28–1.01 (the Act). The charges included possession of cocaine, possession and delivery of lysergic acid diethylamide (LSD), and possession with intent to deliver both marijuana and diazepam. The jury also found him guilty of conspiracy to violate the act. The defendant appeals from the trial justice's denial of the motion to suppress evidence and refusal to pass the case. The motion to suppress also objected to the propriety of the defendant's arrest. The facts relevant to these motions follow.

Massachusetts State Trooper Raymond J. Auld, assigned to the Narcotics Unit in Sturbridge, worked undercover investigating illegal narcotics transactions in South Worcester County. During April 1982 Trooper Auld arranged several small purchases of mescaline from Robert Richards. The latter suggested that Auld could purchase larger quantities more economically from Michael Habenstreit. Habenstreit and Trooper Auld arranged for the sale of 5,000 tablets ("hits") of mescaline for $5,000. Although Auld went to Habenstreit's apartment on the arranged date, the trooper postponed the deal when Habenstreit told him they would have to drive to Woonsocket, Rhode Island, to obtain the mescaline. Auld later testified that he needed time to assemble a backup team with Rhode Island authorities. Ten officers from Massachusetts and Rhode Island were involved in this collaborative effort.

Prior to his next meeting with Habenstreit, Trooper Auld typed paragraphs 1 through 15 of the application for a search warrant of the Rhode Island destination. On May 14, 1982, the officer again met Habenstreit to complete their deal. Before proceeding on their drive, Habenstreit dialed the Rhode Island area code. and a phone number to confirm the arrangements. The two men drove to 41 Beech Street in Woonsocket. They parked behind another vehicle situated in front of the driveway. From this vantage point, Auld observed Habenstreit enter the left door of the duplex and then return to the car approximately five minutes later carrying a brown paper bag. Auld's view of the bag's contents revealed five plastic bags, each containing 1,000 "hits" of mescaline. Auld at this point drew his gun to arrest Habenstreit. With the car door open and believing Auld was robbing him, Habenstreit yelled for help.

After the police took custody of Habenstreit, other troopers passed through the left door that Habenstreit had utilized. The troopers found defendant and his wife in the house and secured the premises. Trooper Auld and Rhode Island State Trooper Randall A. Paulhus then left to complete the search-warrant affidavit. Approximately two to four hours after the initial entry, the troopers returned with the completed warrant. At trial defendant moved to suppress the narcotics and accompanying paraphernalia seized pursuant to the search warrant.

The defendant also appeals from the trial justice's decisions to pass the case. He objects to the prejudicial impact of testimony concerning his address. The defense sought to prove that Leo DeLaurier was absent on May 14, 1982; he was not therefore involved in the narcotics transactions. To support that theory, defendant's brother-in-law testified that DeLaurier was separated from his wife from September or October 1981 to July 1982. During that time, he resided at 757 Grove Street in Woonsocket. The state presented the testimony of Detective Maurice Jalette of the Woonsocket Police Department to rebut this evidence. To establish that defendant resided on Beech Street, the detective testified to a search warrant issued in March of 1982 for Leo DeLaurier at 41 Beech Street. Attempting to avoid the prejudice of prior illicit activity that the jury might infer from the search-warrant testimony, defendant moved for a mistrial. In response the trial justice cautioned the jury that it should ignore any testimony concerning the prior warrant. The defendant again moved to pass the case when Detective Jalette testified that the police had engaged in surveillance of 757 Grove Street. Accord-

ing to observations, defendant did not live on Grove Street. Thus the jury had to choose whether to believe the brother-in-law or the detective. Belief in either story might cause prejudice to defendant. Just as he had cautioned the jurors against the prior warrant, the trial justice also cautioned them to disregard the surveillance testimony. He determined that neither statement merited the grant of a motion to pass.

## I

DID THE TRIAL JUSTICE ERR IN DECLINING TO SUPPRESS EVIDENCE OBTAINED SUBSEQUENT TO A WARRANTLESS ENTRY BUT PURSUANT TO A SEARCH WARRANT?

The defense argues that the initial entry of the police was illegal. Furthermore, that entry led to the discovery of the name Leo DeLaurier, which was used in the warrant. Since the warrant contained impermissibly obtained information, it too was invalid, and all evidence discovered pursuant to it should be excluded. We address these arguments chronologically.

 The existence of exigent circumstances justified the police entry to secure the 41 Beech Street premises. The Supreme Court of the United States has clearly prohibited the warrantless search of a dwelling based only on probable cause to believe the dwelling contains contraband. *Payton v. New York*, 445 U.S. 573, 587, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639, 651 (1980); *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S. Ct. 1969, 1971–72, 26 L. Ed. 2d 409, 413 (1970); *Jones v. United States*, 357 U.S. 493, 497, 78 S. Ct. 1253, 1256, 2 L. Ed. 2d 1514, 1518 (1958). The rationale underlying that proposition is that the mere existence of articles subject to seizure is not enough to disturb the security and privacy of a person in his or her home without a warrant. *Payton v. New York*, 445 U.S. at 587–89, 100 S. Ct. at 1381, 63 L. Ed. 2d at 651. The existence of an exigency, however, justifies an exception to the warrant requirement. In *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S. Ct. 2408, 2414, 57 L. Ed. 2d 290, 301 (1978), the Supreme Court

explained, " 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." The entry and search cannot exceed the degree of the exigency. *See id.* at 393, 98 S. Ct. at 2413, 57 L. Ed. 2d at 301; *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S. Ct. 1868, 1882, 20 L. Ed. 2d 889, 908 (1968). Rhode Island precedent carries forward these principles. In *State v. Jennings*, 461 A.2d 361, 366 (R.I. 1983), this court stated, "[w]hen evidence is likely to be lost, destroyed, or removed during the time required to obtain a warrant and when, because of the circumstances, it is difficult to secure a warrant, a warrantless entry and search may be justified." *See also Mincey v. Arizona*, 437 U.S. at 395, 98 S. Ct. at 2414, 57 L. Ed. 2d at 301. Nevertheless, "a warrantless search beyond the scope of a brief survey to ascertain whether additional malefactors or victims are inside the premises is violative of the Fourth Amendment to the United States Constitution." *State v. Hockenhull*, 525 A.2d 926, 932 (R.I. 1987) (citing *State v. Jennings*, 461 A.2d at 367).

Law enforcement action in the instant case comports with these guidelines. Police observations throughout the investigation led to reasonable inferences indicating Habenstreit's arrest would precipitate an emergency situation. The reason for the transaction was greater supply at a lesser price. Habenstreit brought narcotics out of the house. These facts support the inference that the house contained more narcotics. Trooper Auld had observed Habenstreit call Rhode Island to confirm the arrangement just prior to their departure. He reasonably inferred, therefore, that the transaction involved at least one other person. Given the proximity of the parked car, anyone in the house could have heard Habenstreit shout for help and could have observed the ensuing arrest. Auld logically concluded that a substantial possibility existed that a person in the house would destroy the remaining contraband. "[T]he Fourth Amendment * * * [does not deny] law enforcement the support of the usual

inferences which reasonable men draw from evidence." *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S. Ct. 367, 369, 92 L. Ed. 436, 440 (1948). Probable cause for a warrantless search "exists where 'the facts and circumstances within their [the officers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 1310–11, 93 L. Ed. 1879, 1890 (1949) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543, 555 (1925)). The police sought to prevent the likely destruction of evidence by checking the premises for any occupants. Having found Mr. and Mrs. DeLaurier, the police secured the house. They took no further action until Troopers Auld and Paulhus returned with the warrant. Thus, the police remained within the parameters of the exigent-circumstances exception.

█ The defense next argues that the evidence seized pursuant to the warrant was improperly admitted at trial. DeLaurier contends that the warrant affidavit contained illegally obtained information that invalidated the warrant. The defense further maintains that the warrant was fatally overbroad. We reject both these theories.

An affidavit for a search warrant must provide the magistrate with a substantial basis for determining the existence of probable cause for issuance of a search warrant. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 549, *reh. denied,* 403 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Trooper Auld's affidavit supplied this substantial basis. He completed the first fifteen paragraphs of the application prior to the trip to Woonsocket. This portion of the affidavit describes Auld's initial contact with a smaller dealer for purchases of LSD and Auld's subsequent introduction to Michael Habenstreit for the purchase of larger quantities. These facts firmly establish probable cause.

Trooper Auld completed paragraphs 16 and 17 after Habenstreit's arrest. These paragraphs completed the application. Section 16 listed the troopers who participated in the raid and recounted events at Habenstreit's apartment prior to the drive. Paragraph 17 detailed the incident leading up to Habenstreit's arrest.

█ In the closing section, Troopers Auld and Paulhus requested that "permission be granted to search and seize at the home of Leo Leon DeLaurier, Jr. located at 41 Beech Street, Woonsocket, Rhode Island, for contraband LSD, cocaine and any other drug contained within the Uniform Substance Act of the State of Rhode Island." The defense contends that use of DeLaurier's name in the final portion invalidates the application because the name was learned from the unlawful entry at 41 Beech Street. We disagree. The basis for the warrant was obtained through Auld's investigation. The troopers could have learned the name through inquiry of a neighbor or by looking through public real estate records. No direct cause links the entry to the efficacy of the warrant in a manner that would mandate the warrant's invalidity. "[W]hen, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Nix v. Williams,* 467 U.S. 431, 448, 104 S. Ct. 2501, 2511, 81 L. Ed. 2d 377, 390 (1984).

Furthermore the name in this warrant is unnecessary to the warrant's validity. The application requires the name of the owner "if known." "Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Daily,* 436 U.S. 547, 555, 98 S. Ct. 1970, 1976, 56 L. Ed. 2d 525, 535 (1978). Criminal suspicion need not center on the owner. *Id.* at 555–56, 98 S. Ct. at 1976, 56 L. Ed. 2d at 535.

The case of *Segura v. United States,* 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599

(1984), is on point in terms of the independent search warrant. In that case the District Court initially held that no exigent circumstances justified the warrantless entry into the defendant's apartment. Agents from the New York Drug Enforcement Task Force arrested the defendant in the lobby of his apartment building. They proceeded to Segura's apartment, which they secured for nineteen hours pending issuance of the search warrant. *Id.* at 801, 104 S.Ct. at 3383, 82 L.Ed.2d at 606. The United States Supreme Court held that the illegality of the entry, made in the absence of probable cause or exigent circumstances, did not taint the evidence found under the legitimate warrant.[1] *Id.* at 814, 104 S.Ct. at 3390, 82 L.Ed.2d at 614–15.

■ Case law also contravenes defendant's argument that the warrant was defective in its failure to describe precisely the place to be searched. The defendant faults the warrant because it permitted a search of "41 Beech Street." Actually the warrant referred to the home as a duplex and authorized the troopers "to search and seize at the home of Leo Leon DeLaurier Jr. located at 41 Beech Street." A description is adequate "if the officer charged with making the search is able with reasonable effort to identify and ascertain the place intended to be searched with certainty." *State v. Costakos,* 101 R.I. 692, 694–95, 226 A.2d 695, 696 (1967). The purpose of the particularity requirement is to prevent exploratory searches made on mere suspicion rather than on judicially determined probable cause. *Maryland v. Garrison,* ___ U.S. ___, ___, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 80 (1987); *State v. Wilshire,* 509 A.2d 444, 451 (R.I.1986). In *Garrison* the Supreme Court analyzed the validity of a search pursuant to an overbroad warrant. In that case, the warrant permitted the officers to enter the entire third floor of a building. After entry they realized there were two separate apartments and, accordingly, confined their

search to the defendant's quarters. The Court held that subsequent discovery that a warrant is overbroad does not render it invalid. ___ U.S. at ___, 107 S.Ct. at 1017–18, 94 L.Ed.2d at 81. In the instant case the officers never infringed on any third-party interests. The description was specific enough to indicate to the officers the proper scope of their search.

Consequently we affirm the trial justice's decision to admit the evidence. We hold that exigent circumstances justified the initial entry and that the search warrant was facially valid as well as faithfully executed. The legitimate search of defendant's home led to the seizure of narcotics and narcotics paraphernalia. This evidence provided the probable cause for defendant's arrest.

## II

### DID THE TRIAL JUSTICE ERR IN HIS DENIAL OF DEFENDANT'S TWO MOTIONS TO PASS THE CASE?

■ We have firmly established the rule that the decision to pass a case lies within the sound discretion of the court. *State v. Fernandes,* 526 A.2d 495, 498 (R.I.1987); *State v. Brown,* 522 A.2d 208, 210 (R.I. 1987); *State v. Pailin,* 114 R.I. 725, 729, 339 A.2d 253, 255 (1975). The court will not disturb the ruling unless the trial justice misconceived or overlooked material evidence or was clearly wrong in his or her decision. *State v. Gaines,* 528 A.2d 305, 310 (R.I.1987); *State v. Brown,* 522 A.2d at 210; *State v. Pailin,* 114 R.I. at 729, 339 A.2d at 255.

In deciding whether a statement made on rebuttal should be admitted, the trial justice assesses its prejudicial impact; if ineradicable or inexpiable, the motion to pass should be granted. If the prejudice can be cured, timely and effective instructions must be given. *State v. Brown,* 522 A.2d at 210; *State v. Collazo,* 446 A.2d 1006, 1010 (R.I.1982); *State v. Marrapese,* 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). The

1. The Supreme Court of the United States has granted review for two defendants in *United States v. Moscatiello,* 771 F.2d 589 (1st Cir. 1985). The Court held that despite an initial warrantless entry, evidence discovered pursuant

to a subsequent valid search warrant was admissible. No argument date has yet been set for *United States v. Murray,* 771 F.2d 589 (1st Cir. 1985), *cert. granted,* ___ U.S. ___, 107 S.Ct. 1368, 94 L.Ed.2d 685 (U.S.1987).

determination is made on an ad hoc basis, examining the statement in its factual context. *State v. Brown*, 522 A.2d at 211; *State v. Marrapese*, 116 R.I. at 7, 351 A.2d at 98. Detective Jalette's statements concerning the defendant's address are not inflammatory. Any prejudice would have resulted from permissible inference rather than from the direct comments. We are of the opinion that the trial justice's cautionary instructions were suited to the situation and sufficient to dispel any indirect prejudice to the defendant.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed.