**STATE**

v.

**Kevin H. STOREY.**

No. 2009–178–C.A.

Supreme Court of Rhode Island.

Dec. 3, 2010.

456

Jane M. McSoley, Department of Attorney General, for Plaintiff.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

**OPINION**

Justice INDEGLIA, for the Court.

The defendant, Kevin H. Storey (defendant or Storey), appeals from his conviction for possession of a firearm after a previous conviction for a crime of violence (G.L.1956 § 11–47–5); possession of methylenedioxy amphetamine ("Ecstasy") (G.L.1956 § 21–28–4.01(c)(2)(i)); and possession of marijuana (§ 21–28–4.01(c)(2)(ii)). Specifically, the defendant challenges the warrant that was executed to search his residence. He contends that the affidavit supporting the warrant did not provide requisite probable cause, nor

did it describe the place to be searched with sufficient particularity. Accordingly, the defendant asks this Court to find the search invalid and reverse the trial justice's denial of his motion to suppress the evidence seized. This case came before the Supreme Court for oral argument on September 28, 2010, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After an examination of the written and oral submissions of the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

On June 20, 2005, Det. Christopher Francesconi (Francesconi) applied for a warrant to search Storey's residence at 52 Wannisett Avenue in East Providence, Rhode Island for "evidence of illegal narcotics (specifically cocaine) and the sale of illegal narcotics which are stored at [the residence]." To support the warrant, Francesconi submitted to a District Court judge (judge)[1] an affidavit that contained the following information aimed at justifying probable cause to search the single-family residence. Francesconi first identified his credentials as a five-and-a-half-year veteran of the East Providence Police Department on assignment with the Vice Unit. He included a further explanation that the Vice Unit investigates violations of

the Uniform Controlled Substances Act in the City of East Providence. Next, Francesconi's affidavit recounted that "[a]pproximately two months" before the June 20, 2005 warrant application, the Vice Unit received a tip relaying Storey's current involvement in "the sale and distribution of cocaine from his residence."

Francesconi investigated this tip by conducting a criminal-background check of Storey and a "trash pull" at Storey's then-alleged residence at 52 Wannisett Avenue. The criminal-background check revealed that Storey was arrested numerous times between 1989 and 2002 for crimes including assault and battery, assault with a dangerous weapon, assault with intent to commit murder, damaging property, operating a motor vehicle without a license, and driving under the influence. Francesconi included all of this criminal-background information in the affidavit. The affidavit also stated that Francesconi conducted a trash pull at 52 Wannisett Avenue on June 17, 2005, a day scheduled for the city's trash pickup. Francesconi collected refuse placed on the curbside of the residence, took it to the police station, and then searched its contents. According to the affidavit, the garbage included "evidence of illegal narcotic activity." It then elaborated that "twelve cut plastic baggies and two pieces of mail in the name of Kevin Storey" were found in the trash[2] and that one of the plastic baggies contained a "white powdery residue" that "tested positive for the presence of cocaine." In addition to the two pieces of mail, Francesconi's affi-

1. Because magistrates typically perform the warrant-issuing function, this Court necessarily must compare the judge's probable-cause determination with the vast majority of case-law that references magistrates. As such, for convenience in conducting this comparison, we will refer to the judge as "the magistrate" in the analysis section. In so doing, this Court intends no disrespect to the judge and duly notes his status as a former Acting Chief Judge of the District Court.

2. Although this information was not included in the affidavit, the seizure report for the 52 Wannisett Avenue trash pull also stated that two pieces of mail with Danielle Saleeba's (Saleeba) name were discovered in the refuse.

davit also declared that he "was able to confirm Storey's address [at 52 Wannisett Avenue] by various other police investigative techniques."

Based on this affidavit, the judge was satisfied that probable cause to search Storey's residence existed and issued the warrant on June 20, 2005. The warrant authorized the search of 52 Wannisett Avenue for "[c]ocaine, other illegal narcotics, ledgers, U.S. currency, scales, paraphernalia and other items related to the sale and distribution of narcotics specifically cocaine."

On June 23, 2005, Francesconi and Det. Karl Jacobson (Jacobson), with several uniformed East Providence police officers, executed the search warrant at 52 Wannisett Avenue. After knocking, Francesconi served Danielle Saleeba (Saleeba), Storey's then-girlfriend and now wife, who also lived at the residence during the relevant period, with the search warrant. Francesconi testified that Storey soon emerged from the bathroom, acknowledged the police and their warrant, and upon Francesconi's query whether there was "any contraband inside the residence[,]" admitted that he had two rifles underneath his bed. Francesconi located the two weapons, a Marlin .22–caliber rifle and a loaded Springfield 12–gauge shotgun, and then proceeded to search other parts of the bedroom. There, the police discovered ammunition for the two weapons they had found, ammunition for a weapon of a caliber not found at the residence, two Ecstasy tablets, "a small quantity" of marijuana,

an apparatus for smoking marijuana, and $1,587 in cash. After the weapons were located, Jacobson discovered bags containing cocaine inside Saleeba's purse. After the search and seizure of the weapons and drugs, the police took both Storey and Saleeba into custody. During questioning by the police at the station, Storey proceeded to make several incriminating statements about his ownership of the weapons and drugs.

On September 30, 2005, a criminal information was filed charging Storey with six counts, including the possession of cocaine with the intent to deliver (count 1), possession of a firearm after a previous conviction for a crime of violence (count 2), possession of a controlled substance with the intent to deliver while armed (count 3), possession of Ecstasy (count 4), conspiracy with Saleeba to possess a controlled substance (count 6), and possession of marijuana (count 7). Under the same information number, Saleeba was charged with possession of cocaine (count 5).

On February 20, 2006, during pretrial motions, Storey waived his right to a jury trial and moved to suppress the evidence seized from his residence.[3] With regard to the motion to suppress, defendant argued that the judge erred by issuing the search warrant based on an affidavit that did not establish probable cause.[4] The defendant asserted that the two-month-old, anonymous tip was unreliable and stale. He further contended that even combining the tip with defendant's several non-drug-related convictions and the trash pull reveal-

3. Also during pretrial motions, the state dismissed counts 1 and 6 based on Rule 48(a) of the Superior Court Rules of Criminal Procedure and severed Storey's case from Saleeba's.

4. Although before the trial court defendant did not present orally his alternate argument that the warrant failed to describe the place

to be searched with sufficient particularity (or as nearly as may be), he did include this challenge in his written memorandum to the trial justice to support his motion to suppress. Storey preserved this argument for appeal by specifically requesting the trial court record to incorporate all arguments made in his memorandum.

ing twelve cut plastic baggies, residue of cocaine, and two pieces of mail addressed to defendant, the affidavit still did not provide the requisite probability that criminal activity, specifically drug sales and distribution, was occurring at 52 Wannisett Avenue.

The trial justice disagreed. He first found that anonymous tips, such as the one included in Francesconi's affidavit, are not per se unreliable, and first-time, untested informants can provide information that supports a finding of probable cause. Furthermore, he determined that despite the two-month period between the tip and the trash pull, the tipster's "information [was] verified and corroborated by the fact that Storey still lives there, and within his trash the police do find a residue of cocaine." Essentially, the trial justice determined that the tip provided to the Vice Unit sometime around April 20, 2005 "was still correct with respect to what was still happening in that residence two months later in June [2005]." As to the non-drug-related arrests included in the affidavit, the trial justice recognized that "an individual's criminal background can play a part in the probable cause matrix" and the "recitation of [defendant's] assaultive behavior" was "not without some relevance." He then articulated that probable cause is determined using the "totality of [the] circumstances test," which requires the issuing magistrate to "make[ ] a practical, common sense decision * * * given all the circumstances set forth in the affidavit [that] there is, in fact, the probability that contraband or evidence of a crime would be found in a particular place." Based on this standard, the trial justice agreed with the judge that there was "sufficient information in the four corners of that affidavit and the fair inferences therefrom" to conclude probable cause existed to search defendant's residence. Accordingly, the trial justice found the search warrant valid and declined to suppress any evidence seized from defendant's residence.[5]

At the subsequent, jury-waived trial that commenced on February 20, 2006, defendant was convicted of three offenses: possession of a firearm after a previous conviction for a crime of violence (count 2), possession of Ecstasy (count 4), and possession of marijuana (count 7).[6] On April 27, 2006, defendant was sentenced to a mandatory two years on count 2; three years suspended on count 4; and one year suspended on count 7. The sentences were consecutive. Judgment of conviction was entered on May 4, 2006, and defendant filed a timely notice of appeal the next day.

## II

### Standard of Review

■■■ "When reviewing a trial justice's decision granting or denying a motion to

---

5. Though clearly stating that he was not diminishing what he determined was a sufficient affidavit and properly issued warrant based on probable cause, the trial justice did mention *sua sponte* that were this affidavit somehow found "fatally thin or flawed[,]" the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897, 924, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), still would preclude suppression. *See id.* at 926, 104 S.Ct. 3405 (holding that evidence obtained based on a search warrant later found invalid because of the lack of probable cause will not be suppressed if po-

lice officers acted in "reasonable" reliance of the warrant issued by a "detached and neutral" magistrate). However, in light of this Court's holding that the warrant is valid, we decline to address the good-faith exception to the exclusionary rule at this time. *See State v. Byrne*, 972 A.2d 633, 642 n. 15 (R.I.2009).

6. At the close of all evidence, the state dismissed count 3 (possession of a controlled substance with the intent to deliver while armed) based on Rule 48(a).

suppress, 'we defer to the factual findings of the trial justice, applying a "clearly erroneous" standard.' " *State v. Flores,* 996 A.2d 156, 160 (R.I.2010) (quoting *State v. Barkmeyer,* 949 A.2d 984, 995 (R.I.2008)). Our review of "a trial justice's determination of the existence or nonexistence of probable cause" necessitates *de novo* treatment. *Id.* (quoting *State v. Foster,* 842 A.2d 1047, 1050 (R.I.2004)). However, "[i]t is incumbent upon the trial justice and the reviewing court to accord great deference to the issuing magistrate's probable-cause determination, so long as there is a showing of 'a substantial basis from which to discern probable cause.' " *State v. Byrne,* 972 A.2d 633, 638 (R.I.2009) (quoting *State v. Correia,* 707 A.2d 1245, 1249 (R.I.1998)).

Likewise, our review of whether a warrant states with sufficient particularity (or as nearly as may be) the description of the place to be searched also requires bifurcation. Again, any findings of fact made by the trial justice in denying a motion to suppress for want of particularity are afforded great deference per the clearly erroneous standard. *State v. Jeremiah,* 696 A.2d 1220, 1222 (R.I.1997) ("In assaying the Superior Court's decision to deny the motions to suppress [based on a challenge to 'requisite particularity' of the 'place or places to be searched'], we apply the clearly erroneous standard of review, mindful that we must examine the evidence in the light most hospitable to the state"). However, we examine anew the application of constitutional law regarding particularity to the facts. *Cf. State v. Apa-*

*lakis,* 797 A.2d 440, 443 (R.I.2002) ("With respect to questions of law and mixed questions of law and fact involving constitutional issues, however, this Court engages in a *de novo* review * * *."); *see also Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (stating that the analysis of a warrant's validity based on the Fourth Amendment's particularity requirement is a constitutional issue).

## III

### Analysis

On appeal, Storey challenges both the sufficiency of probable cause for issuance of the search warrant and the particularity of the warrant's description of the place to be searched.

### A

#### The Basis for Probable Cause

Based on the totality of the circumstances presented in the affidavit, defendant argues that a finding of probable cause was not justified because: (1) the tip was anonymous, (2) the tip was stale, (3) the trash-pull evidence [7] was insufficient to corroborate the tip, (4) his criminal-background information was irrelevant to the drug crime the police were investigating, and (5) Saleeba's residence at 52 Wannisett Avenue was not disclosed to the magistrate, which limited the magistrate's knowledge of material information and affected the inferences he made when determining the existence of probable cause.

---

7. In his supplemental prebriefing statement, defendant makes a passing argument that "the reasonableness of the trash pull investigative technique in this instance is dubious," even though at trial, defendant expressly waived any contest that his reasonable expectation of privacy was infringed by this search. Generally, when a claim of error is not prop-

erly preserved below, we need not address its merit. *See In re Miguel A.,* 990 A.2d 1216, 1223 (R.I.2010) ("This Court's 'raise-or-waive' rule precludes our consideration of an issue that was not raised or articulated at trial."). Accordingly, we decline to review the constitutionality of the trash pull.

■ This Court's recent opinion, *Byrne*, 972 A.2d at 637–38, provides succinct guidelines for reviewing a search warrant's validity. As a threshold requirement, our first task is ensuring that the issued warrant was "based on a sworn affidavit by a police officer that was submitted to a neutral and detached judicial officer * * *." *Id.* at 637 (citing Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution). Here, as there is no dispute about the submission of a sworn affidavit or the impartiality of the magistrate, we proceed to the next step in the review: determining whether the search warrant was based on probable cause. *Id.* at 637 (citing *State v. Verrecchia*, 880 A.2d 89, 94 (R.I.2005)); *see also* Rule 41(c) of the Superior Court Rules of Criminal Procedure.

■ In doing so, we examine whether there was "a substantial basis from which to discern probable cause" from the "totality of the circumstances" found within "the four corners of the affidavit prepared in support of the warrant." *Byrne*, 972 A.2d at 638 (quoting *Correia*, 707 A.2d at 1249 and citing *State v. Joseph*, 114 R.I. 596, 603, 337 A.2d 523, 527 (1975) and *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Our review of the magistrate's determination permits that his assessment of probable cause may be based on facts contained in the affidavit, as well as on "the reasonable inferences that may be drawn from those facts." *Id.* We also recognize that "affidavits are to be interpreted in a realistic fashion that is consistent with common sense, and not subject to rigorous and hypertechnical scrutiny." *Id.* (citing *Gates*, 462 U.S. at 235–39, 103 S.Ct. 2317). Applying all these principles, our ultimate inquiry asks whether the magistrate made a "practical, common-sense determination" that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317). Essentially, a magistrate is not required to assert with certainty that the search items will be found in that particular place, rather the magistrate "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *Id.* at 639 (quoting *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985)); *see also State v. Pratt*, 641 A.2d 732, 736 (R.I.1994) (stating that although the probable-cause standard requires "more than a mere suspicion," it demands "only the probability, and not a prima facie showing, of criminal activity") (quoting *State v. Baldoni*, 609 A.2d 219, 220 (R.I. 1992)). Finally, we firmly acknowledge the postulate that "the resolution of doubtful or marginal [probable-cause] cases * * * [is] largely determined by the preference to be accorded to warrants"[8] *Byrne*, 972 A.2d at 639 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

### 1

### Facts Disclosed in the Affidavit

■ At the outset, we note that defendant challenges individual portions of the affidavit, but fails to fully acknowledge that the probable cause, totality-of-the-cir-

---

8. The Supreme Court of the United States repeatedly has articulated the Fourth Amendment's preference for warrants. *See, e.g., Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("The Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant,' * * * and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches") (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

cumstances test looks to the entire mosaic of presented information. "Although each piece of information may not alone be sufficient to establish probable cause and some of the information may have an innocent explanation, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers.'" *State v. Schmalz*, 744 N.W.2d 734, 738 (N.D.2008) (quoting *State v. Thieling*, 611 N.W.2d 861, 863 (N.D. 2000)). Here, the affidavit presents not only an anonymous tip, twelve cut plastic baggies, the residue of cocaine, and prior non-drug-related criminal activity, but it also presents the confluence of all these information sources. Given the proper inferences a magistrate may make, the amalgamation of this information points to the "fair probability" that drugs and the indicia of drug distribution will be found at Storey's residence. We cannot disagree that the magistrate had a substantial basis from which to discern probable cause based on the totality of the instant facts.

### i

### Anonymous Tip

 Furthermore, even deconstructing the affidavit into its major components does not change the outcome of our analysis. Although the impetus for investigating Storey for cocaine distribution was an anonymous tip, including this tip in the affidavit as part of the probable-cause matrix is not constitutionally problematic. We previously have established that first-time, anonymous informants are not per se unreliable. *State v. Grossi*, 588 A.2d 607, 608 (R.I.1991) (citing *State v. Ricci*, 472 A.2d 291, 297 (R.I.1984)). Additionally, this Court recognizes that a tip with unknown reliability can be corroborated by independent police investigation, and together the tip and the other investi-

gation can establish probable cause. *See State v. Keohane*, 814 A.2d 327, 330 (R.I. 2003) (explaining that "use of an anonymous informant as the source of the initial investigation is not fatal to the state's case" where the tip is "thereafter corroborated"). Here, the information that led the Vice Unit toward an investigation of Storey was received on or about April 20, 2005, and later was corroborated by evidence removed from Storey's trash on June 17, 2005.

### ii

### Tip Staleness

 Although the Vice Unit received the tip almost two months before the warrant was issued, we hold that the trash-pull evidence refreshed the viability of that information and was properly included in the affidavit. *See State v. Spaziano*, 685 A.2d 1068, 1069–70 (R.I.1996) (holding that "anonymous tips received in 1993 and 1994 * * * were [not] too old to support a finding of probable cause for the search warrant * * * [where the] affidavit also contained sufficient current information" from a 1995 surveillance of the defendant's property); *see also United States v. Schaefer*, 87 F.3d 562, 568 (1st Cir.1996) ("When an affidavit tendered in support of a warrant application contains information that is remote in time, a magistrate may still hold it to be adequate if it also contains sufficient recent facts corroborating the older data and linking that data to the present."). Here, the combination of an older tip, plus fresh evidence discovered close in time to the warrant application was sufficient to show that the tip was not stale and to establish probable cause.

Even more persuasive that the tip was refreshed by the trash pull is the fact that the information contained in the April 2005 tip (cocaine distribution) was directly consistent with the evidence

Francesconi found in the trash on June 17, 2005 (cocaine residue and cut baggies). This consistency made it reasonable for the magistrate to infer that the drug use and distribution had been ongoing at the residence since the April 2005 tip and would continue throughout June 2005, after the warrant was issued. *See Commonwealth v. Matias*, 440 Mass. 787, 802 N.E.2d 546, 552 (2004) (holding that "the trash pull conducted on * * * the day the affidavit was submitted, revealed evidence 'consistent with' [the six-month-old tip]" which justified the inference that the information relayed in the tip was a "'protracted or continuous' activity that was still ongoing [on the date of the trash pull]"). Despite the two-month period between the tip and the trash pull, we are persuaded that the consistency of these two pieces of evidence justified the magistrate's inference that Storey's drug distribution was ongoing and there was "a fair probability that contraband or evidence of a crime [would] be found" at Storey's residence. *Byrne*, 972 A.2d at 638 (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317).

To support his staleness argument, Storey cites several cases that do not help his cause. Storey first argues that the affidavit in *State v. King*, 693 A.2d 658 (R.I. 1997), presented more reliable and detailed tips than the anonymous tip in this case, which should further persuade this Court that the instant tip was stale. However, *King* actually supports this Court's opinion that older tips are viable even if the affiant fails "to specify the dates or the times of the observations by the informants," provided that the tip is properly corroborated and refreshed by recent, relevant evidence. *Id.* at 662. The other cases cited by Storey are equally ineffective because they involved stale, controlled-drug purchases without the advent of more recent evidence. *See Hemler v. Superior Court*, 44 Cal.App.3d 430, 118 Cal.Rptr. 564, 566

(1975); *People v. Damian*, 299 Ill.App.3d 489, 233 Ill.Dec. 528, 701 N.E.2d 171, 175 (1998). We hold that the tip to the Vice Unit was not stale and was properly considered by the magistrate as part of the totality-of-the-circumstances test.

### iii

### Tip Corroboration from the Trash Pull

We are not persuaded that the evidence removed from the trash pull did not corroborate the tip or augment the fair probability that indicia of drug use and distribution would be found at Storey's residence. The defendant argues that one baggie containing residue of cocaine is not sufficient to indicate the requisite probability for drug distribution. Rather, defendant maintains that one baggie is equivalent with personal use. He further argues that "twelve cut plastic baggies" in no way supports probable cause because Francesconi's affidavit did not specifically connect such innocuous items with drug distribution. We do not subscribe to these arguments.

This Court initially notes that neither the affidavit nor the warrant was drawn so narrowly as to limit the police to search for indicia of drug distribution and sales only. In the affidavit, Francesconi articulated his belief that "there is evidence of illegal narcotics (specifically cocaine) *and* the sale of illegal narcotics which are stored at 52 Wannisett Avenue." (Emphasis added.) Clearly, Francesconi requested the opportunity to search for both the drugs and evidence of drug sales. Consistent with Francesconi's affidavit, the issued warrant permitted a search for "*[c]ocaine, other illegal narcotics,* ledgers, U.S. currency, scales, paraphernalia *and* other items related to the sale and distribution of narcotics specifically cocaine." (Emphasis added.) Again, the warrant authorized the

police to search for both drugs and drug distribution and sales. Here, Storey cannot reasonably argue that the police searched in a location where drugs could not be found in contravention of the warrant.

However, regardless of the warrant's dual authority to search for both drugs and the indicia of drug distribution and sales, this Court nonetheless holds that the magistrate did have a substantial basis to discern the probable cause to search for evidence of distribution and sales, as well. The guidelines for analyzing affidavits are clear; we do so in a way "consistent with common sense, and not subject to rigorous and hypertechnical scrutiny." *Byrne,* 972 A.2d at 638. Francesconi's affidavit states that there was "evidence of illegal narcotic activity" in Storey's trash. In the very next sentence Francesconi explains that there were "twelve cut plastic baggies" and one baggie that contained cocaine residue in the garbage. Based on the juxtaposition of these two sentences and common sense, the magistrate could infer that Francesconi, an experienced police officer assigned to the Vice Unit, recognized that the trace of cocaine, plus numerous, cut baggies was "evidence of illegal narcotic activity." A magistrate is entitled to credit an experienced police officer's opinion indicated in the affidavit on whether an item is evidence of drug sales and distribution and use it to support a finding of probable cause. *See Agurs v. State,* 415 Md. 62, 998 A.2d 868, 896 (2010) ("Reviewing courts,

like warrant-issuing magistrates in the first instance, are entitled to give credence to the expertise and experience of police officers in developing knowledge about the practices and proclivities of drug dealers.").[9]

Storey cites *State v. Josephson,* 123 Idaho 790, 852 P.2d 1387 (1993), to support his argument that the trash-pull evidence did not corroborate the drug-distribution tip. Storey suggests that the insufficient evidence discovered in Josephson's trash consisting of "two marijuana cigarette butts, an empty pack of 'Zig–Zag' rolling papers, a bag apparently containing marijuana residue, and five [marijuana] plant stems" is analogous to the evidence in Storey's trash that included residue of cocaine and twelve cut plastic baggies. *Id.* at 1390. However in that case, the affidavit stated that the trash pull occurred *one month before* the affiant-officer applied for the search warrant. *Id.* at 1388, 1391. Although the *Josephson* court did consider whether the contents of the trash pull were sufficient evidence of distribution, the length of time between the trash pull and the warrant application also contributed to the court's final conclusion that probable cause to search Josephson's residence one month later was not shown. *Id.* at 1392. The facts here are distinguishable from *Josephson* because the instant trash pull occurred just three days before Francesconi's warrant application and did provide probable cause to search for the indicia of distribution.

Further arguing that the tip was not corroborated by the trash pull, Storey

9. Likewise, the magistrate can use his or her own common or specialized experience to make reasonable inferences when determining the existence of probable cause. *Ornelas,* 517 U.S. at 699, 116 S.Ct. 1657 (holding that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges");

*State v. Sinapi,* 359 N.C. 394, 610 S.E.2d 362, 366 (2005) (noting that North Carolina law establishes "that a magistrate's '[r]easonable inferences from the available observations, particularly when coupled with common or specialized experience, long have been approved in establishing probable cause'") (quoting *State v. Riggs,* 328 N.C. 213, 400 S.E.2d 429, 434 (1991)).

suggests that Francesconi erred by not undertaking an investigation to rule out the possibility that the residue of cocaine actually belonged to Saleeba, not Storey. The defendant argues that Francesconi's failure to inform the magistrate that Saleeba's mail also was found in the trash affected the magistrate's ability to properly assess whether the tip was corroborated by the trash pull. We disagree. Even if the magistrate had known that there was a second occupant in the house at the time of the warrant application, it would not significantly have affected his probable-cause analysis. The 52 Wannisett Avenue property was a single-family residence and there was no indication that Storey lacked control over the entire premises. *See State v. Davis*, 16 Wash.App. 657, 558 P.2d 263, 264–65 (1977) ("[P]ossession and control of premises need not be exclusive, but may be inferred from such circumstances as payment of rent, or possession of keys."). As such, there was a fair probability that Storey could have hidden his drugs anywhere in the house, regardless of Saleeba's presence. "[A] warrant is valid when it authorizes the search of a street address with several dwellings if the defendant[ ] [is] in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect." *United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir.1985). Combining the trash-pull evidence with a tip alleging Storey's drug-distribution activities at that residence, there was a substantial basis for the magistrate to conclude that probable cause existed, regardless of second-occupant Saleeba's presence.

### iv

### Inclusion of Non–Drug–Related Criminal Background

■ We see no error in the affidavit's inclusion of Storey's non-drug-related criminal background as some justification for finding probable cause. Regardless of admissibility at trial, the magistrate may consider all criminal information as part of the totality of the circumstances, even if the crimes are unrelated to the subject matter of the warrant. *See United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir.1993) (holding that the inclusion of "prior arrests and convictions" in a warrant is "permissible" though "especially" helpful at establishing probable cause where the prior crimes involved the "same general nature as the one which the warrant is seeking to uncover").

### 2

### Facts Not Disclosed in the Affidavit

■ We do not give weight to defendant's argument that the omission of evidence indicating Saleeba's occupancy at 52 Wannisett Avenue was a "selective inclusion of facts" intended to "bolster the case against Mr. Storey." The defendant did not seek a *Franks* hearing before the trial justice and, therefore, waives his right to suggest the application of *Franks v. Delaware* to this Court. *In re Miguel A.*, 990 A.2d at 1223 (articulating the raise-or-waive rule); *see Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (holding that upon a "substantial preliminary showing * * * the Fourth Amendment requires that a hearing be held at the defendant's request" to flesh out the "allegation of perjury or reckless disregard [in the affidavit] * * * by a preponderance of the evidence"). Furthermore, beyond the speculation advanced by Storey, we see no evidence in the record that Francesconi's "omission [was] 'designed to mislead' or [was] made 'in reckless disregard of whether [it] would mislead.'" *United States v. Tate*, 524 F.3d 449,

455 (4th Cir.2008) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990) (emphases omitted)).

Thus, we are satisfied that the four corners of the affidavit provided a substantial basis for the magistrate to find probable cause in this case.

## B

### The Warrant's Description of the Places To Search

■ Lastly, defendant challenges the warrant on the grounds that it did not state with sufficient particularity the location to be searched. Storey contends that the warrant was overbroad because it failed to describe "any specific room, floor, or location within" 52 Wannisett Avenue where the police should have centered their search. He argues that a narrowly tailored search was especially vital here because a second person, Saleeba, also occupied the house. These arguments do not persuade us.

The Fourth Amendment requires an issued warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." Similarly, article 1, section 6, of the Rhode Island Constitution requires that a warrant "describ[e] as nearly as may be, the place to be searched and the persons or things to be seized." Naturally, the probable cause and particularity requirements go hand in hand. *See State v. DeLaurier*, 533 A.2d 1167, 1171 (R.I.1987) ("The purpose of the particularity requirement is to prevent exploratory searches made on mere suspicion rather than on judicially determined probable cause").

In our view, there was probable cause to search the entire premises of the single-family house. That Saleeba also lived at 52 Wannisett Avenue with Storey does not change the particularity calculus. *See DeLaurier*, 533 A.2d at 1170 (validating a search warrant even though the affidavit only referenced one occupant because "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized") (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)); *see also United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir.1991) ("A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence"). Because there was probable cause to search the entire *place* articulated in the warrant, it was not necessary for the magistrate to take into account who else was living there when he authorized the place to be searched.

The defendant's reliance on *State v. Jeremiah*, 696 A.2d 1220 (R.I.1997), and *State v. Costakos*, 101 R.I. 692, 226 A.2d 695 (1967), is misplaced. The warrants in both of these cases were overbroad because the authorized places to search were unequivocally unsupported by probable cause. The warrant in *Jeremiah* permitted "a blanket or general search of the entire twelve-acre, eighteen-building, ten-warehouse, eighty-three-separate-unit Silver Center Compound" even though there was probable cause to search only the defendant's single warehouse. *Jeremiah*, 696 A.2d at 1224, 1225. Likewise, in *Costakos*, the warrant "commanded the police to conduct a blanket or general search of an entire building although probable cause, if it existed, had been shown only for searching the single apartment occupied by defendant." *Costakos*, 101 R.I. at 696, 226 A.2d at 697. Conversely here, the

warrant authorized the search of Storey's single-family home for which there was probable cause to look in every room for the presence of drugs or the indicia of drug distribution. By stating that the search could encompass 52 Wannisett Avenue, "a grey, vinyl sided, single family residence, with white trim and a detached garage," the warrant apprised the executing officers with a description so they could easily "identify and ascertain the place to be searched." *Jeremiah*, 696 A.2d at 1224.

## IV

### Conclusion

Given the deference accorded to the magistrate's finding of probable cause and the totality of circumstances providing a "substantial basis" for the "fair probability that contraband or evidence of a crime" would be found at 52 Wannisett Avenue, this Court holds that the affidavit and, therefore, the warrant were constitutionally proper. It was not error for the trial justice to deny the defendant's motion to suppress for lack of probable cause or particularity. We affirm the Superior Court judgment. The record may be remanded to the Superior Court.