**In re ARMAND.**

**No. 80–218–Appeal.**

Supreme Court of Rhode Island.

Jan. 27, 1983.

Dennis J. Roberts II, Atty. Gen., Sharon O'Keefe, Sp. Asst. Atty. Gen., for petitioner.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Atty., Appellate Div., Janice M. Weisfeld, Asst. Public Defender, for respondent.

OPINION

KELLEHER, Justice.

This is an appeal by the respondent, Armand, a juvenile adjudged delinquent by a justice of the Family Court relying on the court's finding that Armand willfully and unlawfully carried a pistol on or about his person without a license, in violation of G.L.1956 (1981 Reenactment) § 11–47–8. Armand appeals the denial of his motion to suppress the introduction of the weapon into evidence. He contends that the weapon was seized pursuant to an unlawful search incident to an arrest made without probable cause. The facts as disclosed at the suppression hearing are as follows.

Between 7 and 7:30 in the evening of March 16, 1980, Patrolman George Pearson (Pearson) of the Providence police department responded to a call to the scene of a housebreak at 30 Touro Street. After verifying that a breaking and entering had in fact occurred, he proceeded to the intersection of Branch Avenue and Charles Street located about one and a half blocks from the scene of the break. There, in the parking lot of the White Cross Pharmacy, he observed a youth twirling a medallion on a red ribbon. Standing next to him was a companion whom Pearson described as a juvenile about five feet six inches tall, wearing a brown or tan jacket. Officer Pearson advanced to question the youths, but as he approached them, the medallion-twirler began to run. Officer Pearson chased and apprehended him, and in a subsequent search, he discovered on the youth jewelry that had been taken from the Touro Street address. By the time they returned to the pharmacy parking lot, the twirler's companion was gone.

While Officer Pearson was engaged in a foot chase at the White Cross Pharmacy location, Patrolman Arthur Sweeney (Sweeney), a five-year veteran of the police force, was conducting an on-the-scene investigation at the Touro Street address. The victim of the housebreak and the surrounding neighbors advised him that they saw youths fleeing from the area shortly before the

police arrived. Officer Pearson, upon returning to the scene of the housebreak, informed Officer Sweeney and other officers present that he had apprehended the twirler, whom he identified as Michael. He also provided Officer Sweeney with a description of Michael's companion, the one who had disappeared from the pharmacy parking lot. With this information in mind, Officer Sweeney left the house and resumed patrolling the area.

At about 9:45 that evening, Officer Sweeney returned to the vicinity of Branch Avenue and Charles Street, where he noticed two youths, one of whom he recognized as Armand, Michael's brother. Officer Sweeney noted that Armand was wearing a jacket that fit the earlier description of Michael's companion in the pharmacy parking lot. He approached the youths and asked them their names; they refused to cooperate. Officer Sweeney then informed them that they were being taken to the central police station for further questioning concerning an investigation into the housebreak. He apprised them of their *Miranda* rights and frisked them for concealed weapons. At that point he discovered a .25-caliber pistol in Armand's jacket pocket. Both suspects were then placed in the police cruiser and brought to the station.

At the suppression hearing, the trial justice concluded that Officer Sweeney had probable cause to arrest Armand lawfully and to search him incident to that arrest. The trial justice's rationale turned on Officer Sweeney's identification of the youth in the vicinity of the housebreak who appeared to fit the description related to him earlier that evening both by Officer Pearson and again over the patrol-car radio.

 After reviewing the record, we can find no error in the trial justice's determination. Although we are required to examine the record independently when a defendant alleges a violation of his constitutional rights, we shall not overturn a trial justice's findings on a motion to suppress unless the decision is clearly erroneous. *State v. Jenison*, R.I. 442 A.2d 866, 872

(1982). The evidence will be viewed in the light most favorable to the state. *State v. Roddy*, R.I. 401 A.2d 23, 30 (1979). Furthermore, establishing probable cause to arrest does not demand the same degree of proof as is required to establish guilt. *State v. Welch*, R.I. 441 A.2d 539, 541 (1982). Indeed, we have repeatedly stated that a motion to suppress evidence obtained as a result of a search incident to a warrantless arrest is properly denied if, at the moment of the arrest, the police officer has reasonably trustworthy information about the facts and circumstances which would be sufficient to warrant a prudent person's believing that the suspect had committed or was committing a crime. *Id.* 441 A.2d at 541; *In re John C.*, R.I. 425 A.2d 536, 538, *cert. denied*, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981).

 A finding of probable cause in any given case rarely furnishes a formula for making similar findings in other cases because probable cause depends upon the facts and circumstances of the particular case being reviewed. However, a general principle applicable here is that the mosaic of facts and circumstances must be viewed cumulatively "as through the eyes of a reasonable and cautious police officer on the scene, guided by his or her experience and training." *In re John C.*, R.I. 425 A.2d at 538–39. Moreover, in our review we must examine the completed mosaic in terms of what the police knew, what they heard, and what they observed as trained officers. *Id.*

 With these principles as our guide, we note that one of the most important elements in determining whether probable cause existed to justify Armand's arrest was Officer Sweeney's knowledge that a crime had actually been committed. *See State v. Frazier*, R.I. 421 A.2d 546, 550 (1980). Officer Sweeney had been told that youths were seen fleeing from the scene of the housebreak. He was sufficiently acquainted with Armand to recognize him on sight and to know that he was the brother of Michael, a suspect previously arrested

that evening in connection with the break. He also knew that a youth in a tan jacket had been seen with Michael when Michael was apprehended. Armand was wearing such a jacket when Officer Sweeney arrested him, and he refused to cooperate by identifying himself. Furthermore, Michael's proximity to the housebreak when apprehended, Armand's proximity to the location of Michael's arrest, and the relatively short time spanning these events are significant factors in the probable-cause analysis.

Our reading of the record convinces us that Officer Sweeney's decision to arrest Armand was an informed one based upon his police training and his five years' on-the-job experience. The pattern that emerges from the scenario described above constitutes a mosaic that we believe would be indicative of criminal activity to the average, reasonably prudent person. Consequently, we cannot fault the trial justice's refusal to suppress the evidence of the weapon.

The respondent's appeal is denied and dismissed, the judgment of delinquency is affirmed, and the case is remanded to the Family Court.