## STATE

v.

### Feliciano E. CASTRO.

### No. 2003–438–M.P.

Supreme Court of Rhode Island.

Feb. 6, 2006.

Virginia M. McGinn, Esq., Providence, for Plaintiff.

Paula Lynch, Esq., East Greenwicch, for Defendant.

Present: WILLIAMS, CJ., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Feliciano E. Castro, was convicted of delivering a controlled sub-

stance, to wit, cocaine, as set forth in Schedule II of G.L.1956 § 21–28–2.08, in violation of § 21–28–4.01(A)(2)(a), and sentenced to ten years at the Adult Correctional Institutions, with six months to serve, and one hundred fourteen months suspended with probation. He did not timely file a notice of appeal; however, on October 2, 2003, this Court granted the defendant's petition for writ of certiorari. The defendant asks this Court to review the trial justice's denial of his motion to suppress certain statements he made to a police officer as the fruits of an illegal arrest and of his motion for a new trial for failure to prove the charge beyond a reasonable doubt. For the reasons set forth herein, we affirm the judgment of conviction.

### Facts and Procedural History

On August 23, 2002, Det. Peter Conley of the Providence Police Department, a fourteen-year veteran of the force, with six years as a member of the Special Services Unit dealing with narcotics, gambling, and prostitution, was conducting undercover routine surveillance in the Eddy Street and Thurbers Avenue area of Providence with Det. Robert Enright, also of the force. Detective Conley testified that the officers were in this area because it was known to be "a high area for narcotics transaction[s]," based upon numerous arrests made by the unit in the past. At approximately 1:45 p.m., the detectives observed a blue pickup truck with Massachusetts license plates pull into the Burger King parking lot at the corner of Eddy Street and Thurbers Avenue. The man driving the pickup truck, later identified as Jonathan Beniers, did not leave his vehicle, but rather pulled into a parking space in a "rushed manner" and made a brief call on his cellular telephone. When Beniers finished the telephone call, he quickly pulled out of the parking lot onto Eddy Street.

Detectives Conley and Enright followed the blue pickup truck in their unmarked police vehicle. They followed the driver from Eddy Street to Thurbers Avenue to Prairie Avenue, then to Oxford Street and Baxter Street, until the driver made a quick left turn onto Massie Avenue. Detective Conley testified that once on Massie Avenue, the blue pickup truck "went left of center," stopping at a green Toyota that was parked across from 29 Massie Avenue. The pickup truck pulled alongside the Toyota so that the driver's side door of the Toyota was facing the driver's side door of the pickup. Two male subjects, later identified as defendant, Feliciano E. Castro, and his ten-year-old son, were in the green Toyota.

The detectives parked their car thirty to forty feet away on Massie Avenue, from which vantage point Det. Conley observed Beniers, the driver of the truck, put his left hand out and hand over folded United States currency to Castro, the driver of the Toyota. Detective Conley said that "within seconds the driver of the Toyota then reached out and handed a white bag of suspected narcotics to the driver of the pickup truck." The bag was a little bigger than a half-dollar. Detective Conley suspected that the bag contained narcotics based on his experience as a narcotics officer, the way the transaction occurred, and how quickly it transpired.

Immediately after the exchange, the blue pickup truck left Massie Avenue. The detectives followed the truck and radioed their observations to other detectives in the area. Sergeant Alfred Zonfrilli and Det. Joseph Colanduono received the transmission, which relayed the 29 Massie Avenue address and a description of the green Toyota and its license plate. The testimony differed about whether a physi-

cal description of defendant was given.[1]

Detectives Conley and Enright followed the blue pickup truck from Massie Avenue to Prairie Avenue to Thurbers Avenue. At a red light, Det. Conley exited his vehicle, approached the pickup truck on foot, identified himself as a police officer, and had the driver step out of the vehicle. When he approached the truck, Det. Conley observed a white plastic bag containing suspected narcotics in plain view on the middle armrest. He then arrested Beniers and seized the bag. Directly after seizing the bag, Dets. Conley and Enright radioed the other officers advising that a bag of suspected narcotics had been seized from the pickup truck and requesting that they apprehend the subject in the Toyota.

Detective Colanduono testified that he responded to the radio transmissions and arrived at 29 Massie Avenue within two to three minutes. Upon seeing the green Toyota parked in the same spot and matching the description relayed over the radio, Det. Colanduono approached the Toyota, identified himself, removed defendant from the vehicle, frisked him for weapons, and placed him in handcuffs. He then recited defendant's *Miranda* rights,[2] which the detective testified defendant said he understood. When Det. Colanduono informed Castro of the reason why he was being arrested, defendant responded, "You got that guy?" When Det. Colanduono answered "Yes," defendant said "Oh, God," and asked, "You saw me sell the drugs?" The detective further testified that when told that he had been observed selling drugs, defendant volunteered, "I am just a small time dealer. Nothing big. I sell a little bit on the side. I was trying to make money." Detective Colanduono testified that defendant said he was trying to make extra money because of marital problems.

Within five minutes, Dets. Conley and Enright returned to 29 Massie Avenue with Beniers in custody, at which time both detectives positively identified Castro as the suspected seller. At the police station, an inventory of Castro's belongings revealed he had $146 in United States currency on his person. A later field test of the contents of the bag seized from the blue pickup truck indicated that the substance was indeed cocaine, a fact to which both parties stipulated at trial.

Castro was charged with one count of delivering a controlled substance. Before the trial began, he moved to suppress the statements he made to Det. Colanduono. His motion was denied; and, after a trial, a jury returned a verdict of guilty. On April 14, 2003, the trial justice denied defendant's motion for a new trial. The defendant now asks this Court to review the trial justice's denial of (1) his motion to suppress the statements as the fruits of an illegal arrest and (2) his motion for a new trial for failure to prove the charge beyond a reasonable doubt.

## Motion to Suppress

The defendant first alleges that the trial justice erred in determining that the police had probable cause to arrest him and that, therefore, the statements he made to Det. Colanduono should have been suppressed as the fruits of his unlawful arrest. "In reviewing the trial justice's denial of defendant's motion to suppress

---

1. While Det. Conley could not recall giving a physical description over the radio, and Sgt. Zonfrilli also could not recall receiving one, Det. Colanduono testified that either Det. Conley or Det. Enright stated that the operator of the Toyota was a dark-skinned, possibly Hispanic, male with a shaved head and glasses.

2. *See Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the incriminating statements * * *, we defer to the factual findings of the trial justice, applying a 'clearly erroneous' standard." *State v. Apalakis*, 797 A.2d 440, 443 (R.I.2002) (quoting *State v. Page*, 709 A.2d 1042, 1044 (R.I.1998)). "But we review de novo a probable-cause-to-arrest determination, because this type of mixed-law-and-fact ruling implicates constitutional rights." *State v. Guzman*, 752 A.2d 1, 3 (R.I.2000); *accord Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

The Fourth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause * * *." *See Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, section 6, of the Rhode Island Constitution protects the same interests. The United States Supreme Court has held that a police officer may arrest a suspect without a warrant if, before the arrest, the officer has probable cause to believe that the suspect has committed a crime. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). By statute, police officers in this state may make warrantless arrests under the same circumstances. *See* G.L.1956 § 12–7–4.

 "The existence of probable cause to arrest without a warrant depends on whether, under the totality of the circumstances, the arresting officer possesses sufficient trustworthy facts and information to warrant a prudent officer in believing that the suspect has committed or was committing an offense." *Guzman*, 752 A.2d at 4; *see also Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). When we determine whether probable cause existed to arrest a suspect, "we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *State v. Belcourt*, 425 A.2d 1224, 1226 (R.I.1981) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause to arrest does not require the same quantum of proof needed to establish guilt beyond a reasonable doubt. *Id.* Mere suspicion, however, is never enough. *See State v. Kryla*, 742 A.2d 1178, 1182 (R.I.1999).

 This Court has said that "the mosaic of facts and circumstances [available to the arresting officer] must be viewed cumulatively 'as through the eyes of a reasonable and cautious police officer on the scene, guided by his or her experience and training.'" *In re Armand*, 454 A.2d 1216, 1218 (R.I.1983) (quoting *In re John C.*, 425 A.2d 536, 538–39 (R.I.1981)). When no probable cause to arrest exists, statements obtained by exploitation of that illegal arrest are "fruits of the poisonous tree" that are generally inadmissible at trial. *See Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Probable cause, however, need not be based upon direct personal observations of the arresting officer. The determination may be grounded upon hearsay information relayed to the arresting officer, as long as there exists a substantial basis for relying on the information. *State v. Burns*, 431 A.2d 1199, 1204 (R.I.1981). Furthermore, "[a]n arresting officer in the field may rely on departmental knowledge which comes to him through official channels." *State v. Smith*, 121 R.I. 138, 141, 396 A.2d 110, 113 (1979).

For example, in *Belcourt*, 425 A.2d at 1227, this Court held that information

transmitted by a radio dispatcher based on physical descriptions of the perpetrator that the victims of the crime gave was sufficiently trustworthy to support the arresting officer's probable cause to arrest the defendant. Similarly, in *State v. Duffy*, 112 R.I. 276, 280–81, 308 A.2d 796, 799 (1973), *rev'd on other grounds, State v. McGehearty*, 121 R.I. 55, 59–60, 394 A.2d 1348, 1351 (1978), we held that information relayed to a police officer via police radio was enough to establish probable cause to apprehend the defendant because, based on the arresting officer's extensive experience and the description of the suspect, he had a right to rely upon the information obtained via the transmission. Besides reliable information transmitted over police radio and officer experience, this Court has also held that an arrest's proximity in both location and time to the crime's commission is a significant factor in the probable-cause analysis. *See In re Armand*, 454 A.2d at 1219.

In the present case, after a *de novo* review of the facts and circumstances available to Det. Colanduono when he arrested defendant, we conclude that he clearly possessed the requisite probable

cause to make the arrest. Detective Conley, based on his extensive training and experience in narcotics crimes and the high-crime area he was surveilling, determined that a suspected drug transaction had taken place between defendant and Beniers. He observed a very brief transaction involving what he believed to be an exchange of possible drugs for currency. He then followed and apprehended the suspected buyer, Beniers, and seized a bag of white substance suspected to be cocaine. Detective Conley then relayed this information via police radio to Det. Colanduono, who was told, at the very least, the location of defendant and a description of his vehicle. When Det. Colanduono responded to the call within minutes of the suspected drug deal, defendant's green Toyota still was parked in the exact spot Det. Conley had described.

▬ Under these circumstances, we conclude that Det. Colanduono, relying on the information he received through official channels from a reliable and seasoned fellow officer, had the requisite probable cause to arrest Castro.[3] Accordingly, be-

---

**3.** The defendant has cited cases from other jurisdictions to argue that Det. Conley could not have had probable cause to determine that a suspected drug deal had taken place because of his distance from the vehicles when he made his observations and the fact that he was unsure whether the white substance was narcotics until the later field test, and thus Det. Colanduono could not reasonably rely on that information when transmitted over the radio. Although, as defendant points out, "[o]ne of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed[,]" *State v. Frazier*, 421 A.2d 546, 550 (R.I.1980), this Court has never held that absolute certainty that an object exchanged was drugs is essential. *See, e.g., State v. Travis*, 568 A.2d 316, 321 (R.I.1990) ("By its very definition the possibility of error is always inherent in the determination of probable cause."); *Frazier*,

421 A.2d at 550 ("When the arrest or search is made when the police do not know that a crime has been committed, more and better evidence is needed to prove that probable cause exists for the arrest than is the case when the police do know that a crime has been committed."). Other jurisdictions appear to be in agreement, and have held probable cause to exist in circumstances similar to the case at bar. *See, e.g., United States v. White*, 655 F.2d 1302, 1303–04 (D.C.Cir.1981) (holding that probable cause was established when an officer experienced in narcotics investigations saw a woman who was a passenger in an automobile receive from the driver a small, unidentified object in exchange for money); *Commonwealth v. Santaliz*, 413 Mass. 238, 596 N.E.2d 337, 339–40 (1992) (finding probable cause existed when an experienced narcotics investigator observed an exchange of an object for money outside of a

cause the arrest was lawful, defendant's extemporaneous statements were not fruits of a poisonous tree, but rather fruits that had fully ripened on a savory tree and virtually fallen in the detective's basket. We therefore hold that defendant's motion to suppress the statements properly was denied.

## Motion for a New Trial

■ The defendant's second contention on appeal is that the trial justice erred in denying his motion for a new trial because the state failed to prove that defendant delivered a controlled substance beyond a reasonable doubt. Rule 33 of the Superior Court Rules of Criminal Procedure provides that "[o]n motion of the defendant the court may grant a new trial * * * if required in the interest of justice." The standard for ruling on such motions is well established in Rhode Island. "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Otero*, 788 A.2d 469, 472 (R.I.2002) (quoting *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994)).

■ "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial must be denied." *Otero*, 788 A.2d at 472. "If, however, 'the trial justice finds that the state has failed to sustain its burden of proof, a new trial must be ordered.'" *Id.* (quoting *State v. Clark*, 603 A.2d 1094, 1096 (R.I.1992)). When the trial justice has articulated adequate reasons for denying the motion, the decision "will be given

great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *State v. Gomez*, 848 A.2d 221, 234 (R.I.2004).

■ In the present case, defendant argues that a new trial should have been granted because there were inconsistencies in the testimony each officer offered with respect to certain facts. After reviewing the testimony, however, the trial justice denied the motion, finding that the jury heard the inconsistencies in the officers' testimony but apparently determined, as the trial justice did, that those inconsistencies were "immaterial." The trial justice recognized that these detectives make arrests like this every day, and often are paired with different partners while doing surveillance. He attributed the inconsistencies in their testimony to the repetitive nature of their jobs, making it not at all surprising that minor details may be forgotten in such a routine arrest. The trial justice found the officers' testimony to be believable. Finding "no inconsistency which would give rise to a larger suspicion that there was an informal conspiracy to convict innocent defendants," the trial justice concluded that the inconsistencies of who was traveling with whom, specific timing, and what type of description was relayed over the police radio, while factors for the jury to have considered, were not "linchpins [upon] which this case would rise or fall."

■ We find that these reasons, articulated by the trial justice, are adequate to warrant upholding his decision to deny the defendant's motion for a new trial. Moreover, giving the trial justice's ruling

taxicab in a place of high incidence of drug traffic); *People v. Jones,* 90 N.Y.2d 835, 660 N.Y.S.2d 549, 550, 683 N.E.2d 14 (1997) (finding probable cause that a narcotics trans-

action occurred when an experienced officer observed an exchange of an unidentified object for currency in a drug-prone location).

appropriate deference, we conclude that he did not overlook or misconceive material evidence; nor was he otherwise clearly wrong. To prove delivery of a controlled substance beyond a reasonable doubt, the state must prove the actual delivery or attempted delivery of a controlled substance by the defendant and that the defendant did so knowingly and intentionally. *See State v. Oliveira*, 882 A.2d 1097, 1116 (R.I.2005). Testimony adduced at trial indicated that Det. Conley observed, based on his extensive experience in narcotics crimes, what he suspected to be an exchange of cocaine for money between Beniers and the defendant. He testified he saw a small white bag exchanged for folded United States currency. Later, Det. Conley seized a small white bag of what tested to be, and was stipulated by the parties to be, cocaine from Beniers's truck. Shortly thereafter, the defendant was apprehended sitting in the same green Toyota, parked in the same location as the purveyor of the suspected narcotics had been. After his arrest, the defendant made incriminating statements implicating himself as a small-time dealer involved in the crime, and had $146 in his pocket upon reaching the police station. With these ample facts in the record as a basis for an inference by both the jury and the trial justice that the defendant delivered a controlled substance, we cannot say that the trial justice was clearly wrong or misconceived or overlooked material evidence in denying the defendant's motion for a new trial.

### Conclusion

Accordingly, we affirm the judgment of conviction and remand the case to the Superior Court.