April 27, 2022

**Supreme Court**

No. 2019-281-C.A.
(P1/17-520BG)

State                    :

   v.                    :

Trearra Hudgen.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                       :

Trearra Hudgen.                          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Long, for the Court.**  The defendant, Tre'arra Hudgen,[1] appeals from a Superior Court judgment of conviction following a trial at which the jury found her guilty of first-degree murder, discharge of a firearm when committing a crime of violence that caused death, conspiracy to assault with a firearm, felony assault with a firearm, first-degree robbery, and carrying a revolver without a license or permit.  The defendant alleges that the trial justice erred in (1) denying her motion to suppress the evidence found at her apartment, (2) denying her motion to suppress

---

[1] While the indictment spells the defendant's name "Trearra," without an apostrophe, in her submissions before this Court defendant spells her name "Tre'arra."  We therefore use this spelling and refer to defendant as "Tre'arra" in this opinion.

the evidence found in her vehicle, and (3) violating her right to confront a witness about promises, rewards, and inducements.

For the reasons stated herein, we affirm the judgment of the Superior Court.

**Facts and Procedural History**

We recite the following summary of relevant facts, which appear in the record of proceedings in the Superior Court.

On Monday, October 31, 2016, Matthew Reverdes was shot and killed. The testimony at trial revealed that Mr. Reverdes lived in the basement apartment of 54 Harrison Street in Pawtucket, Rhode Island. He had a contentious relationship with his neighbors, defendant Tre'arra Hudgen (Ms. Hudgen or defendant) and defendant's romantic partner, Juscelina "Sally" DaSilva, who lived upstairs from Mr. Reverdes in the first-floor apartment of 54 Harrison Street with three of Ms. DaSilva's children. About a week and a half before Mr. Reverdes was killed, defendant and Ms. DaSilva reported to the Pawtucket Police Department and their landlord that they believed Mr. Reverdes had knocked on their bedroom window around 11 p.m. while they were lying in bed.

During the weekend before Mr. Reverdes's death, defendant and Ms. DaSilva drove a rental car to Atlanta, Georgia, to attend a funeral. Julio "Whispers" Cano, the father of two of Ms. DaSilva's children, stayed at the apartment to watch the three children while defendant and Ms. DaSilva were out of town. On the evening

of Sunday, October 30, 2016, Mr. Cano, who was an admitted drug dealer at that time, had stayed awake "sniffing" cocaine into the early morning hours. Around 4:30 a.m., Mr. Cano heard knocking on the children's bedroom window. When Mr. Cano investigated, he observed two individuals, who appeared to be Mr. Reverdes and a female companion, run to a car, get in, and drive away. Mr. Cano called Ms. DaSilva later that morning to tell her of the incident. She responded by sending a message to her landlord to complain again about Mr. Reverdes looking into the windows to her apartment.

Ms. DaSilva and defendant returned home on Monday, October 31, 2016. They unpacked and returned the rental car and drove back to their apartment in defendant's red Honda Accord. Upon returning to the apartment, Ms. DaSilva walked to a nearby gas station to buy a cigar and saw Mr. Reverdes walking his dog. She confronted him about knocking on her windows, which he denied. The encounter unsettled Ms. DaSilva; she called defendant, who met her at the gas station and walked her back to the apartment, where they told Mr. Cano about the confrontation and Mr. Reverdes's denial of knocking on the window.

Hearing this information, Mr. Cano retrieved two guns from his briefcase—a .22-caliber semi-automatic pistol and a .22-caliber revolver—and handed the revolver to defendant. Mr. Cano went downstairs, knocked on Mr. Reverdes's door, and began arguing with Mr. Reverdes. Mr. Cano put the semi-automatic pistol in

Mr. Reverdes's face and pushed his way into the apartment, telling Mr. Reverdes to sit in a chair in the kitchen area. Shortly thereafter, defendant followed Mr. Cano into Mr. Reverdes's apartment and entered the kitchen, holding the revolver. Mr. Cano asked Mr. Reverdes about knocking on Ms. DaSilva's apartment windows, but Mr. Reverdes again denied doing so. The defendant told Mr. Reverdes to stop lying, grabbed Mr. Reverdes's diamond earrings and some of his cash, and briefly went back upstairs to her apartment.

When defendant returned to Mr. Reverdes's apartment, she stood near Mr. Reverdes while Mr. Cano searched for additional money and valuables. As Mr. Cano was searching, defendant and Mr. Reverdes began struggling for control of the revolver defendant was holding, and a shot went off. Mr. Reverdes ran out of the apartment into the hallway, and defendant followed, shooting after him. Mr. Cano joined the pursuit, firing six to eight shots at Mr. Reverdes as Mr. Reverdes ran down Harrison Street.

Thereafter, Mr. Cano grabbed both guns and stashed them in the garage. Mr. Cano wiped any fingerprints off Mr. Reverdes's apartment doorknob and left in Ms. DaSilva's minivan. The defendant and Ms. DaSilva also left, taking Ms. DaSilva's children to a local park in defendant's red Honda.

At approximately 3:45 p.m. that same day, Samantha Briggs, a crew member at Dunkin' Donuts on Cedar Street in Pawtucket, learned from a coworker that

- 4 -

someone in the store had been shot. Ms. Briggs later testified at trial that she went to the front of the store, where she found Mr. Reverdes lying on the ground, rolling around and gasping for air. Her coworker dialed 911, and Ms. Briggs spoke to emergency responders while also asking Mr. Reverdes his name and where he lived. Ms. Briggs recounted at trial that, although she had difficulty understanding what Mr. Reverdes was saying, he told her his name and that he lived at "58 Harrison Ave., second floor." In response to her question asking where he was shot, Ms. Briggs told police, Mr. Reverdes said "there," referring to "58 Harrison Street, on the second." Mr. Reverdes also told Ms. Briggs that he did not know who shot him. When Mr. Reverdes removed his sweatshirt, Ms. Briggs saw that his shirt was covered in blood and that there was a hole in his chest. Police later recovered a single projectile that fell from Mr. Reverdes's sweatshirt. Mr. Reverdes was transported to the hospital, where he was pronounced dead.

On November 1, 2016, detectives from the Pawtucket Police Department obtained a warrant to search the apartment that Ms. DaSilva and defendant shared. Detectives seized narcotics, separated into bagged quantities for delivery; various drug paraphernalia, including a scale; paperwork for Mr. Cano, Ms. DaSilva, and Ms. Hudgen; and a bill of sale made out to defendant for a red Honda.

That same day, detectives also questioned Ms. DaSilva for the first time. They questioned her again the following day, and on November 3, 2016, after questioning Ms. DaSilva a third time, the detectives arrested her.

Detectives also arrested Mr. Cano on November 3. During their later questioning of Mr. Cano, he revealed that he hid the pistol and revolver used in the homicide in the garage at the 54 Harrison Street apartment. After detectives acquired a separate search warrant for the garage, they located the two guns.

Meanwhile, also on November 3, 2016, Connecticut law enforcement officers arrested defendant in Hartford, Connecticut, pursuant to an arrest warrant issued by a Rhode Island judge on probable cause that defendant possessed and intended to deliver the narcotics found in the apartment. Connecticut officers also seized defendant's vehicle, a red 2002 Honda Accord, at that time due to a request from the detectives of the Pawtucket Police Department. The Connecticut officers secured defendant's vehicle in a police tow yard until November 9, 2016, when detectives from the Pawtucket Police Department, in conjunction with the Hartford Police Department, procured a search warrant for the vehicle from a Connecticut judge. Detectives searched defendant's vehicle after the search warrant was issued. The search revealed Mr. Reverdes's diamond earrings, a cell phone, and an additional bill of sale for the vehicle.

In February 2017, a Providence County grand jury indicted defendant on seven counts: (1) first-degree murder; (2) discharge of a firearm in the commission of a crime of violence resulting in death; (3) conspiracy to commit felony assault; (4) felony assault with a dangerous weapon; (5) robbery in the first degree; (6) conspiracy to murder; and (7) carrying a revolver without a license.

During pretrial proceedings, defendant filed three motions to suppress evidence that are relevant to this appeal: two related to evidence found at defendant's apartment, and the third concerning evidence found in defendant's red Honda. In the first motion to suppress, defendant argued that the supporting affidavit did not contain sufficient information to establish probable cause to search the apartment where she resided for evidence related to the homicide. She specifically challenged the fifth paragraph of the affidavit, which reads in pertinent part as follows:

> "There was also reliable information received that Julio 'Whispers' lives at 54 Harrison Street with DaSilva and Hudgen and 5-6 children. * * * The information detailed that 'Whispers' stated a week or two ago that he had 2 (two) .22 caliber guns if they needed them for a dispute."

The defendant argued that there was no indication elsewhere in the affidavit of the reliability of the anonymous source. She argued further that the informant was incorrect in that only three children resided with Ms. DaSilva, and Mr. Cano did not live at 54 Harrison Street. The defendant also maintained that no other

information contained in the affidavit corroborated the statement that Mr. Cano had two .22-caliber guns.

The trial justice denied the motion, finding that there was sufficient information in the affidavit to establish probable cause to search the apartment for evidence consistent with a shooting at that location.

In her second motion to suppress, defendant argued that the affiant, Detective Michael Cioe, of the Pawtucket Police Department, misrepresented his experience and training in the supporting affidavit. The first paragraph of the affidavit reads as follows:

> "Your AFFIANT has been a member of the Pawtucket Police Department for approximately fifteen years. Your AFFIANT is currently assigned to the Pawtucket Police Department Major Crime Unit and have [*sic*] been a Detective for nine years. Your AFFIANT has been trained in numerous advanced investigation, interview/interrogation, evidence collection, and cell phone analysis/mapping schools over the past nine years. Furthermore, I have been involved in or led numerous homicide investigations during that time."

The experience and training described were that of Detective David Silva, of the Pawtucket Police Department, rather than Det. Cioe, who ultimately signed as the affiant. The defendant argued that the false statement of Det. Cioe's experience was material to the magistrate judge's finding of probable cause because the affiant's experience and training assured the magistrate judge that the observations and inferences the affiant made were reasonable and based upon his experience. The

defendant also argued that the affidavit omitted Mr. Reverdes's dying declaration to Ms. Briggs; specifically, the affidavit did not include Mr. Reverdes's statement that he did not know who shot him.

The defendant requested a *Franks* hearing as set forth in *Franks v. Delaware*, 438 U.S. 154 (1978), based on the misrepresentation of Det. Cioe's experience and training only. The trial justice denied defendant's request, finding sufficient probable cause in the remainder of the affidavit after excluding the information about Det. Cioe's experience from his determination. The trial justice suggested that defendant might choose to bring a further motion to suppress via a *Franks* hearing; however, defendant did not renew the motion or otherwise further challenge the misstatement or omission.

The defendant's third motion to suppress related to evidence found after the warrantless seizure of defendant's red Honda. She argued that Connecticut law enforcement officers lacked a lawful basis for the warrantless seizure of her vehicle and the court should therefore suppress the evidence found following the search of the vehicle later conducted on November 9.

At the hearing on the third motion to suppress, Det. Silva testified that he communicated through another detective and two members of the United States Marshals Service and thereby requested that Hartford police officers hold defendant's vehicle, the red Honda, for safekeeping following her arrest because she

was a suspect in a homicide case. Following Det. Silva's testimony, the state notified the trial justice and defendant that a Connecticut officer was not available to testify that day, but would be available the following day. The trial justice asked defense counsel if defendant wanted the Connecticut officer to testify, but defense counsel declined.

Nevertheless, defendant challenged the warrantless seizure of defendant's vehicle on the grounds that no Connecticut officer was available to testify to the standard practice and procedure for vehicle impoundments.

The trial justice denied defendant's motion to suppress, citing the collective-knowledge doctrine as authorizing Connecticut law enforcement to rely on the information provided by Det. Silva to establish probable cause. *See State v. Castro*, 891 A.2d 848, 853 (R.I. 2006) ("An arresting officer in the field may rely on departmental knowledge which comes to him through official channels.") (brackets omitted) (quoting *State v. Smith*, 121 R.I. 138, 141, 396 A.2d 110, 113 (1979)).

The defendant was tried before a jury in October and November 2018. The state introduced the evidence seized from defendant's apartment and vehicle including the narcotics, drug paraphernalia, two bills of sale for defendant's vehicle, Mr. Reverdes's diamond earrings, and the pistol and revolver used during the murder.

The state also called several witnesses, including Ms. DaSilva and Mr. Cano. During cross-examination of Ms. DaSilva by defense counsel, the following exchange, relevant to this appeal, occurred:

> "[DEFENSE COUNSEL:]  And do you remember at the very end of that transcript that he asked you to review, when you found out your kids were in Florida, that they said—that the police told you they're not in [Department of Children, Youth, and Families] custody because you came in and gave a statement? Do you remember that piece?
>
> "[THE STATE]:  Objection.
>
> "THE COURT:  Just a minute.
>
> "(Pause)
>
> "[THE STATE]:  Page 101.
>
> "THE COURT:  Pardon m? [*sic*]
>
> "[THE STATE]:  Page 101.
>
> "THE COURT:  I have it.
>
> "[THE STATE]:  Okay.
>
> " * * *
>
> "[DEFENSE COUNSEL:]  Do you remember the police telling you that—
>
> "THE COURT:  The objection is sustained. Do not answer that question."

Defense counsel then continued her cross-examination of Ms. DaSilva without further comment.

After the state rested its case, it moved to dismiss count six, conspiracy to commit murder, pursuant to Rule 48(a) of Superior Court Rules of Criminal Procedure. With defendant's consent, the trial justice dismissed count six, with prejudice. After deliberations, the jury found defendant guilty of the remaining counts.

The trial justice sentenced defendant as follows: life in prison for first-degree murder; a consecutive term of life imprisonment for discharging a firearm during the murder; ten years in prison, to be served concurrently with her first life sentence, for conspiracy to commit felony assault; life imprisonment, to be served concurrently with her first life sentence, for first-degree robbery; and ten years in prison, suspended, with probation, to be served consecutively to her second life sentence, for carrying a revolver without a license. The sentence for count four, felony assault with a firearm, was absorbed into the sentence for count five.

The defendant timely appealed her conviction.

**Discussion**

On appeal, Ms. Hudgen alleges that the trial justice erred in (1) denying the motions to suppress evidence found at her apartment due to the search warrant's alleged lack of particularity and lack of probable cause, as well as due to purported

misrepresentations and omissions in the supporting affidavit; (2) denying the motion to suppress evidence found in her vehicle because the state did not provide testimony regarding the bases for the warrantless vehicle seizure; and (3) violating her right of confrontation by sustaining the state's objection during Ms. DaSilva's cross-examination. We address each of defendant's alleged errors in turn.

**Motion to Suppress the Fruits of the Apartment Search Warrant**

When we review a trial justice's decision on a motion to suppress, "we defer to the factual findings of the trial justice[.]" *State v. Storey*, 8 A.3d 454, 459-60 (R.I. 2010) (quoting *State v. Flores*, 996 A.2d 156, 160 (R.I. 2010)). "[W]e will not overturn a trial justice's factual findings unless they are clearly erroneous." *State v. Gonzalez*, 254 A.3d 813, 817 (R.I. 2021) (quoting *State v. Tejeda*, 171 A.3d 983, 994-95 (R.I. 2017)). However, we examine the record *de novo* to determine independently whether the defendant's constitutional rights have been violated. *State v. Depina*, 245 A.3d 1222, 1226 (R.I. 2021); *Storey*, 8 A.3d at 460 ("[W]e examine anew the application of constitutional law regarding particularity to the facts.").

The Fourth Amendment to the United States Constitution and article 1, section 6 of the Rhode Island Constitution recognize an individual's right to be free from unreasonable search and seizure of their person, home, and possessions. Both the Fourth Amendment and article 1, section 6 safeguard this right by generally prohibiting police officers from conducting searches and seizures without a warrant

issued by a neutral, detached judicial officer.[2] *State v. Byrne*, 972 A.2d 633, 637 (R.I. 2009). The warrant must state, with particularity, the place to be searched and the things to be seized. U.S. Const. Amend. IV; R.I. Const., art. 1, § 6. Moreover, there must be support for the warrant in the form of an affidavit that sets forth probable cause for searching a particular place and seizing particular things. *Byrne*, 972 A.2d at 638; *see Storey*, 8 A.3d at 466-67 (discussing probable cause and particularity of the place to be searched); *State v. Cosme*, 57 A.3d 295, 301-02 (R.I. 2012) (discussing the nexus between probable cause and the place to be searched); *State v. Jeremiah*, 696 A.2d 1220, 1222-25 (R.I. 1997) (discussing particularity as to the place to be searched). "Any evidence seized pursuant to [a deficient] warrant must be suppressed and may not be used to convict a person whose constitutional rights have been violated by the use of this type of overbroad or general writ." *Jeremiah*, 696 A.2d at 1220-21.

The defendant contends that the trial justice erred in denying her motions to suppress evidence seized from her first-floor apartment at 54 Harrison Street (the

---

[2] There are "a few specifically established and well-delineated exceptions" to this general rule, *Katz v. United States*, 389 U.S. 347, 357 (1967), including the long-recognized automobile exception. *See Carroll v. United States*, 267 U.S. 132, 155 (1925) ("[I]f an officer seizes an automobile or the [contraband] in it without a warrant, and the facts as subsequently developed do not justify a judgment of condemnation and forfeiture, the officer may escape costs or a suit for damages by a showing that he had reasonable or probable cause for the seizure."). However, none of the exceptions apply to the analysis of the denial of defendant's two motions to suppress the evidence seized from her apartment.

apartment) because, she argues: (1) the warrant lacked particularity with respect to the things to be searched for and seized; (2) there was insufficient probable cause to support the warrant; (3) she was entitled to a *Franks* hearing regarding misstatements and omissions in the affidavit that accompanied the warrant; and (4) the lack of particularity in the warrant and the misstatements in the supporting affidavit undermined the trial justice's reliance on the good-faith exception to the exclusionary rule. We address each of defendant's arguments in turn.

### A

### Lack of Particularity

The defendant argues that police searched the first-floor apartment at 54 Harrison Street pursuant to a facially invalid warrant, because the warrant did not describe any articles to be searched for and seized, nor did the warrant, on its face, reference or incorporate the supporting affidavit. At oral argument, defendant conceded that she did not raise the issue of the lack of particularity before the trial justice, but she urges this Court to review the issue as an exception to the raise-or-waive rule.

The raise-or-waive rule restricts an appellant from "rais[ing] an objection or advanc[ing] a new theory on appeal if it was not raised before the trial court." *State v. Sanchez*, 206 A.3d 115, 121 (R.I. 2019) (quoting *Atryzek v. State*, 197 A.3d 334, 337 (R.I. 2018)). We have recognized a narrow exception to the raise-or-waive rule:

where the alleged error is "more than harmless," *State v. Bouffard*, 945 A.2d 305, 311-12 (R.I. 2008), and "an issue of constitutional dimension based on a novel rule of law is presented of which counsel could not reasonably have known during the course of trial." *State v. Gomes*, 690 A.2d 310, 319 (R.I. 1997) (quoting *State v. Leonardo*, 677 A.2d 1336, 1337 (R.I. 1996)).

Ms. Hudgen maintains that the warrant's purported lack of particularity is a grave infraction of her right to be free from unreasonable searches and seizures. She also asserts that the case at bar presents a novel issue in this jurisdiction: whether the mere attachment of a supporting affidavit can satisfy the particularity requirement for a search warrant. However, the question for this Court is not whether the alleged error presents a novel constitutional issue for our consideration, but whether it presents a constitutional issue based on a novel rule of law of which trial counsel could not reasonably have known during the trial proceedings. *See Gomes*, 690 A.2d at 319.

In the instant case, Ms. Hudgen challenges the warrant's particularity with respect to the items to be searched for and seized. In a case decided more than fourteen years before defendant's trial, the United States Supreme Court held that a search warrant completely devoid of particularity is facially invalid: "[U]nless the particular items described in the affidavit are also set forth in the warrant itself * * * there can be no written assurance that the Magistrate actually found probable cause

- 16 -

to search for, and to seize, every item mentioned in the affidavit." *Groh v. Ramirez*, 540 U.S. 551, 560 (2004).

The defendant's argument that the search warrant lacked particularity falls squarely within the parameters of *Groh*. It cannot be said that the challenge presents a constitutional issue based on a novel rule of law of which trial counsel could not reasonably have known during the trial proceedings. Thus, we conclude that defendant waived her challenge to the facial validity of the search warrant.[3] *See Bouffard*, 945 A.2d at 312 (holding that the lack of prior challenge of a statutory scheme on constitutional grounds does not render an issue novel for the exception to the raise-or-waive rule); *Pollard v. Acer Group*, 870 A.2d 429, 432 n.10 (R.I. 2005) (declining to apply the exception to the raise-or-waive rule to a belated constitutional challenge of a tax sale statute); *Cronan ex rel. State v. Cronan*, 774 A.2d 866, 878 (R.I. 2001) (refusing to apply the exception to the raise-or-waive rule to a belated constitutional challenge to private prosecutions); *In re David G.*, 741

---

[3] Police officers, reviewing magistrates, and members of the bar must remain vigilant in safeguarding individuals from unreasonable searches and seizures. "Procedural safeguards * * * have been developed in order to guarantee '[t]he right of the people to be secure in their persons, houses, papers, and effects.'" *State v. Nunez*, 634 A.2d 1167, 1171 (R.I. 1993) (quoting U.S. Const. Amend. IV). "The United States and Rhode Island Constitutions require only that descriptions be as particular as the circumstances of each case will permit." *State v. Ricci*, 472 A.2d 291, 298 (R.I. 1984). Those charged with safeguarding this constitutional right must ensure that search warrants include an appropriate description of the place to be searched and the things to be seized.

- 17 -

A.2d 863, 866 (R.I. 1999) (declining to apply the exception to the raise-or-waive rule to a belated constitutional challenge to the sex-offender registration statute).

## B

## Probable Cause

Ms. Hudgen also argues that there was insufficient probable cause to support the apartment search warrant; specifically, she asserts that the issuing magistrate relied on uncorroborated conclusions of an anonymous, untested source.

As discussed previously, both the Fourth Amendment and article 1, section 6 authorize a neutral, detached judicial officer to issue a search warrant upon a showing of probable cause. *Byrne*, 972 A.2d at 637. We evaluate the existence of probable cause according to a *de novo* standard of review. *State v. Reisner*, 253 A.3d 1273, 1279 (R.I. 2021). Our obligation is "to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (alterations omitted) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The task for this Court is to determine "whether the magistrate made a 'practical, common-sense determination' that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Storey*, 8 A.3d at 461 (quoting *Byrne*, 972 A.2d at 638). The issuing magistrate must ascertain probable cause "within the four corners of the affidavit prepared in support of the warrant * * * and based on the totality of the circumstances

presented in the affidavit." *Byrne*, 972 A.2d at 638 (citations omitted). "[T]he approach to the probable cause question should be pragmatic and flexible." *State v. Verrecchia*, 880 A.2d 89, 94 (R.I. 2005). The magistrate may draw reasonable inferences from the facts within the affidavit to make a probable-cause determination. *Id.* Consistent with this pragmatic and flexible approach, the magistrate may consider hearsay information received through an informant if that information is corroborated by other facts and circumstances within the affiant's knowledge. *Jones*, 362 U.S. at 269; *State v. Riccio*, 551 A.2d 1183, 1186 (R.I. 1988). Under the totality-of-circumstances analysis, "first-time, anonymous informants are not per se unreliable." *Storey*, 8 A.3d at 462. Moreover, we note that the Court is not confronted with the "use of an anonymous informant as the source of the initial investigation" in which the reliability of the informant must be established and the tip corroborated. *State v. Keohane*, 814 A.2d 327, 330 (R.I. 2003).

Ms. Hudgen argues that the magistrate did not have a substantial basis to find probable cause to search the apartment for the .22-caliber weapons, because, she maintains, the affidavit lacked indicia of the informant's veracity, reliability, or basis of knowledge. She focuses on the fifth paragraph of the supporting affidavit, which stated that "reliable information" indicated that Mr. Cano lived at the apartment with defendant, Ms. DaSilva, and Ms. DaSilva's five or six children, and that Mr. Cano had previously said that he had two .22-caliber guns in case they were needed for a

- 19 -

dispute. Ms. Hudgen stresses that the characterization of the information as "reliable" is conclusory, and she highlights the fact that Mr. Cano did not live in the apartment, nor were five or six children residing there.

However, the question for this Court is not whether the fifth paragraph of the affidavit provides a substantial basis to find the two .22-caliber guns in defendant's apartment. Rather, the question is whether the affidavit as a whole provides a substantial basis for concluding that the apartment likely was "the secondary crime scene [and where] Julio Cano keeps the .22 caliber guns which may be the weapon used in this homicide."

Review of the record reveals that, under the totality of the circumstances set forth within the four corners of the affidavit, there was a substantial basis for concluding that a search of the apartment would yield evidence relating to the homicide of Mr. Reverdes. In addition to the information in the fifth paragraph of the affidavit provided by an unidentified source, the affidavit also contained reliable, corroborating evidence gathered by detectives who had canvassed the area, questioned Ms. DaSilva, and spoken with other tenants as well as the landlord of 54 Harrison Street.

First, the affidavit recited facts and circumstances that provided a basis for believing that defendant's apartment located at 54 Harrison Street was the scene of the homicide and may contain evidence such as a gun. The affiant stated that prior

to Mr. Reverdes's death, Mr. Reverdes told Ms. Briggs that he was shot at "58 Harrison Street 2nd floor." The affiant explained that detectives searching for 58 Harrison Street learned that the address did not exist, but that detectives found several shell casings on the sidewalk in front of 54 Harrison Street, where the apartment is located. The affiant also stated that detectives discovered that Mr. Reverdes had moved to the apartment located at 54 Harrison Street two months before the shooting.

The affiant explained that detectives spoke to some of the tenants of the apartment building at 54 Harrison Street and found the door to Mr. Reverdes's basement apartment open. The affiant further explained that, upon entering Mr. Reverdes's apartment, detectives (1) found another shell casing on the kitchen floor; (2) observed what appeared to be a bullet hole in the wall; and (3) discovered Mr. Reverdes's driver's license, which listed his previous address at 58 Dorothy Avenue in Providence. It was reasonable to infer that Mr. Reverdes misspoke when giving the address of where he was shot; he had mixed up the house number from his previous address—58—with the street name of his current address—Harrison Street. Moreover, the affiant explained that Mr. Reverdes's description of where he was shot as being on the second floor of the apartment building was consistent with the affiant's observations of the building layout at 54 Harrison Street; Mr. Reverdes's basement apartment was located on the ground level, while the apartment that was

the subject of the search warrant was located above his apartment, on what could be described as the "second floor."

Second, the affidavit provided reliable information that defendant and Ms. DaSilva had an antagonistic relationship with Mr. Reverdes, their downstairs neighbor. The affiant explained that detectives learned from witnesses and the landlord that Ms. DaSilva and defendant had had prior confrontations with Mr. Reverdes. The affiant stated that Ms. DaSilva and defendant had called the Pawtucket Police Department on October 20, 2016, complaining about Mr. Reverdes knocking on their window. The affiant also stated that approximately thirty minutes before his death, "[Mr.] Reverdes texted a friend explaining that the girls upstairs from him are starting trouble with him."

Although there were inaccuracies in the fifth paragraph of the affidavit, police were able to corroborate information about the apartment residents. Ms. DaSilva told detectives that she lived at the apartment with defendant and three children, and that Mr. Cano was watching her children at the apartment while she was away for the weekend. The inconsistencies—the number of children residing in the apartment, and Mr. Cano's status as a weekend guest rather than a resident—do not render the unidentified source entirely unreliable. *See Verrecchia*, 880 A.2d at 98 (determining that there was sufficient probable cause despite minor inconsistences

- 22 -

between the information in the affidavit and trial testimony because the trial testimony corroborated rather than contradicted the affidavit).

Based on the foregoing, we perceive no error in the trial justice's denial of defendant's motion to suppress the evidence obtained in the apartment based on insufficient probable cause.

## C

### *Franks* Hearing

Ms. Hudgen argues that she was entitled to a hearing, pursuant to *Franks*, cited previously, regarding purported misstatements and omissions in the affidavit that accompanied the warrant; she asserts that the trial justice erroneously denied her request for a hearing to test the veracity of the factual statements contained in the affidavit and, consequently, erred in denying her second motion to suppress.

"We review rulings denying *Franks* hearings with deference." *Verrecchia*, 880 A.2d at 99. "Moreover, the party seeking a *Franks* hearing bears the burden of proof." *Id.*

Defendants are entitled to a hearing to challenge the veracity of factual statements contained in an affidavit when they make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" *Franks*,

438 U.S. at 155-56; *see also State v. Patino*, 93 A.3d 40, 59 (R.I. 2014). A defendant must make an offer of proof that "point[s] out specifically the portion of the warrant affidavit that is claimed to be false[,]" and state the supporting reasons. *Franks*, 438 U.S. at 171. "[T]he misleading aspect of the warrant application [must be] traceable to the affiant's intent to deceive the magistrate issuing the warrant or * * * the affiant [must have] proceeded with reckless disregard for the veracity of the statements included in his or her affidavit." *State v. DeMagistris*, 714 A.2d 567, 575 (R.I. 1998). "Allegations of negligence or innocent mistake are insufficient. * * * Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72.

The defendant's second motion to suppress evidence seized from the apartment identified two alleged defects in the affidavit: (1) the affiant, Det. Cioe, misrepresented his experience and training; and (2) the affidavit omitted any reference to Mr. Reverdes's dying declaration to Ms. Briggs that he did not know who had shot him. However, at the hearing on the second motion to suppress, defendant requested a *Franks* hearing only with respect to the misrepresentation of Det. Cioe's experience and training. The trial justice denied the request for hearing, stating that he found the remainder of the affidavit, excluding the misrepresented

experience, sufficient to support the magistrate's probable-cause determination. Ms. Hudgen did not pursue a *Franks* hearing for the omission of Mr. Reverdes's dying declaration.[4] Thus, we will review whether she was entitled to a *Franks* hearing on the sole basis of her assertion that the affiant mispresented his experience and training.

The defendant has the burden to show not only that Det. Cioe's false statement regarding his experience was intended to deceive the magistrate or was made with reckless disregard for the truth, *Verrecchia*, 880 A.2d at 99; *DeMagistris*, 714 A.2d at 575, but also that, after setting that material aside, there remains an insufficient basis for finding probable cause. *Franks*, 438 U.S. 171-72.

Ms. Hudgen emphasizes that everything about Det. Cioe's experience and training was patently untrue: He had only recently become a detective, and he had not been involved in or led numerous investigations. She argues that the misrepresentation of Det. Cioe's experience and training therefore significantly undermined the reliability of the anonymous, untested informant who provided the

---

[4] As previously discussed, an appellant who failed to press an argument before the trial justice will face difficulty in overcoming the raise-or-waive rule on appeal. *See State v. Sanchez*, 206 A.3d 115, 121 (R.I. 2019). Although Ms. Hudgen identified the omission of the dying declaration in her written motion to suppress, she "did not seek a *Franks* hearing before the trial justice [on that basis] and, therefore, waives [her] right to suggest the application of *Franks v. Delaware* to this Court." *State v. Storey*, 8 A.3d 454, 465 (R.I. 2010).

information to indicate that defendant's apartment was a possible secondary crime scene in a homicide.

It is undisputed that the experience and training described in the affidavit in support of the search warrant were not that of Det. Cioe. Like the trial justice, we acknowledge that the misstatements were sloppy and made in a potentially reckless manner; it was therefore appropriate for the trial justice to exclude the information about Det. Cioe's experience and training when considering whether there was a sufficient basis for finding probable cause in the remaining portions of the affidavit. Nevertheless, given our deferential review of the request for a *Franks* hearing, and considering the previously discussed totality of circumstances set forth within the four corners of the affidavit, we cannot conclude that the trial justice clearly erred in denying defendant's request for a *Franks* hearing.

**D**

**Good-Faith Exception**

Because we conclude that the search warrant was valid, we need not consider defendant's argument that the trial justice erred in relying on the good-faith exception espoused in *United States v. Leon*, 468 U.S. 897 (1984). *Leon*, 468 U.S. at 920-21; *see State v. Rose*, 748 A.2d 1283, 1285 (R.I. 2000) (declining to address the good-faith exception after concluding the search warrant was otherwise valid).

**Warrantless Seizure of Vehicle**

The defendant contends that the trial justice erred in denying her motion to suppress the evidence found in her red Honda after her arrest in Hartford, Connecticut, on November 3, 2016. She argues that the search of the vehicle's contents was unlawful, because the Hartford Police Department seized the red Honda without a warrant. She asserts that there was no evidence to support a finding that the Hartford Police Department impounded the vehicle as a community caretaking activity, nor was there evidence of that department's standard criteria and practice for impounding vehicles, as required by *Colorado v. Bertine*, 479 U.S. 367, 375 (1987) (authorizing police discretion to search vehicles "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity" as an exception to the Fourth Amendment).

Police officers are permitted to temporarily seize vehicles without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime. *State v. Chiellini*, 557 A.2d 1195, 1203 (R.I. 1989), *overruled on other grounds by State v. Werner*, 615 A.2d 1010, 1012 (R.I. 1992). "[P]robable cause, in the automobile context, [is] 'a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure[.]'" *State v. Beauregard*, 198 A.3d 1, 16 (R.I. 2018) (quoting *United States v. Ross*, 456 U.S. 798, 805 (1982)). "Probable cause for a warrantless

search 'exists where the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *State v. DeLaurier*, 533 A.2d 1167, 1170 (R.I. 1987) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).

The record in the instant case establishes that eyewitnesses saw defendant and Ms. DaSilva leaving the scene of the shooting in her red Honda, the same vehicle defendant was driving three days later in Hartford, Connecticut. Additionally, Det. Silva had seized from Ms. Hudgen's apartment a bill of sale made out to Ms. Hudgen for a red Honda; and, during his second interview of Ms. DaSilva, she said that she, her children, and defendant had left the scene of the shooting in the red Honda. Nevertheless, defendant maintains that there is insufficient evidence to support a finding that officers with the Hartford Police Department were aware of this information and thus had probable cause to seize defendant's vehicle.

We perceive no error in the trial justice's reliance on the collective-knowledge doctrine, which provides that "[a]n arresting officer in the field may rely on departmental knowledge which comes to him through official channels." *Castro*, 891 A.2d at 853 (quoting *Smith*, 121 R.I. at 141, 396 A.2d at 113). The trial justice reasonably inferred from Det. Silva's testimony that Hartford police officers received a request to hold the red Honda to prevent disturbance of any evidence

relating to the ongoing criminal investigation. The information conveyed by Det. Silva, through a colleague and two U.S. Marshals, was sufficient to establish probable cause. Officers with the Hartford Police Department properly relied on information provided to them through official channels and seized defendant's vehicle. *See Castro*, 891 A.2d at 853.

Despite defendant's argument to the contrary, it was not clearly erroneous for the trial justice to find that the Hartford Police Department impounded the red Honda at the request of the Pawtucket Police Department for safekeeping after defendant's arrest. Moreover, it is significant that officers secured defendant's car in a police tow yard until November 9, 2016, when the Pawtucket Police Department, in conjunction with the Hartford Police Department, obtained a search warrant from a Connecticut judge. The detectives did not search the red Honda immediately, but properly held it until they could obtain a warrant that authorized the search of its contents, which uncovered, among other items, Mr. Reverdes's diamond earrings. *See Chambers v. Maroney*, 399 U.S. 42, 44, 51-52 (1970) (affirming the validity of a warrantless search of a vehicle after it had been impounded, stating that seizing and holding a vehicle until a search warrant can be obtained is not constitutionally distinct from a warrantless search).[5]

---

[5] We note that in *Chambers v. Maroney*, 399 U.S. 42 (1970), the United States Supreme Court expressed that "[a]rguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until

We therefore conclude that the warrantless seizure of defendant's vehicle did not violate her rights under the Fourth Amendment to the United States Constitution and article 1, section 6 of the Rhode Island Constitution, and that the trial justice did not err in denying her motion to suppress the evidence seized from defendant's vehicle.

**Confrontation Clause**

The defendant contends that the trial justice erred when he, in violation of her Confrontation Clause rights, prevented cross-examination of Ms. DaSilva regarding the promises, rewards, and inducements that Pawtucket detectives offered her.

The Sixth Amendment to the United States Constitution secures the right of a defendant in a criminal trial "to be confronted with the witnesses against him[.]" Article 1, section 10, of the Rhode Island Constitution similarly provides that "[i]n all criminal prosecutions, accused persons shall enjoy the right * * * to be confronted with the witnesses against them[.]" The right of confrontation safeguards the

---

a search warrant is obtained[.]" *Chambers*, 399 U.S. at 51. In *State v. Werner*, 615 A.2d 1010 (R.I. 1992), this Court recognized the *Chambers* rule permitting warrantless searches following a warrantless seizure of an automobile. *Werner*, 615 A.2d at 1013-14 (adopting *Chambers* and holding that, "[a]s long as the police have probable cause to believe that an automobile, or a container located therein, holds contraband or evidence of a crime, then police may conduct a warrantless search of the vehicle or container, even if the vehicle has lost its mobility and is in police custody").

accused's opportunity to cross-examine witnesses against them. *E.g.*, *State v. Tiernan*, 941 A.2d 129, 133 (R.I. 2008); *Davis v. Alaska*, 415 U.S. 308, 315 (1974).

"[T]his Court will not review issues that were not presented to the trial court 'in such a posture as to alert the trial justice to the question being raised.'" *State v. Figuereo*, 31 A.3d 1283, 1289 (R.I. 2011) (quoting *Pollard*, 870 A.2d at 433). In the context of the Confrontation Clause, we require a defendant to state the grounds for a confrontation claim at trial to preserve the issue for appeal. *See State v. Johnson*, 251 A.3d 872, 885 (R.I. 2021) (determining that the defendant waived his Confrontation Clause claim because he failed to raise a Confrontation Clause argument at trial and, instead, argued for the admission of the cross-examination on other grounds); *State v. Merida*, 960 A.2d 228, 234-35 (R.I. 2008) (concluding that the defendant failed to preserve a Confrontation Clause issue concerning a witness's motive and bias when the record indicated that cross-examination at trial focused only on character evidence).

The defendant contends that at trial she attempted to elicit testimony from Ms. DaSilva regarding Pawtucket detectives' efforts to pressure her into becoming a cooperative witness. After the trial justice sustained the state's objection to a single question, defendant continued cross-examination without further comment. At no point did defendant raise a Confrontation Clause argument relating to this questioning.

The defendant now argues that the trial justice knew what testimony her counsel was trying to elicit from Ms. DaSilva regarding the police interview transcript, that Ms. DaSilva had "possible bias, prejudice, or ulterior motive[.]" However, "it may be possible that defense counsel had the Confrontation Clause in mind, [but she] made no reference to the same." *State v. Moten*, 64 A.3d 1232, 1240 (R.I. 2013). Indeed, defendant in the case at bar raised no basis for the admission— constitutional or otherwise—and wholly failed to press the issue. Moreover, the record does not support defendant's contention that the testimony she was trying to bring out was obvious. Therefore, the argument is now waived. *See Johnson*, 251 A.3d at 885; *Merida*, 960 A.2d at 234-36.

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction of the Superior Court and remand the record to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State of Rhode Island v. Trearra Hudgen. |
| **Case Number** | No. 2019-281-C.A. (P1/17-520BG) |
| **Date Opinion Filed** | April 27, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State: <br><br> Mariana E. Ormonde <br> Department of Attorney General <br> For Defendant: <br><br> J. Richard Ratcliffe, Esq. |